ACCEPTED
04-14-00569-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/2/2015 11:38:21 PM
KEITH HOTTLE
CLERK

**04 -14 -00569- CV**

In The Court Of Appeals
For The Fourth District Of Texas
San Antonio Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/2/2015 11:38:21 PM
KEITH E. HOTTLE
Clerk

**BURTON KAHN**
*APPELLANT*

V.

**HELVETIA ASSET RECOVERY INC**.
*APPELLEE.*

On Appeal From The 37th Judicial District Court Of Bexar County, Texas
Trial Court, No. 2013–CI -18355
Hon. Michael Mery, Judge Presiding

**APPELLANTS MOTION FOR REHEARING AND REINSTATEMENT**

**Burton Kahn pro se**
**1706 Alpine Circle**
**San Antonio, TX 78248**
**210-408-9199**
glentrail@yahoo.com

## IDENTITY OF PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of the parties,

attorneys and any other person who has any interest in the outcome of this lawsuit:

**Attorneys for Appellant:**     Burton Kahn Pro-se
1706 Alpine Circle
San Antonio, TX 78248
Tel (210) 408-9199
glentrail@yahoo.corn

**Attorneys for Appellee**:      Elizabeth Conry Davidson
Attorney at Law
926 Chulie Drive
San Antonio, Texas 78216
(210) 380-4899 telephone
(210) 225-2300 facsimile
conrydavidson@gmail.com


Resigned
Haynes and Boone LLP
Lisa Barkley
112 E. Pecan St. Suite 1200
San Antonio, TX 78205 – 1524
Tel (210) 978-7427
Fax (210) 0427
Lisa.Barkley@ haynesboone.com

Resigned
Haynes & Boone, LLP
Werner A. Powers
Natalie DuBose
Scott Everett
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel (214) 651-5487
Fax (214) 200-0468
Werner.Powers@hayneshoone.com

Real Party of Interest          Puerto Verde Ltd. (Bahamian)


Trial Judge:                    Hon. Michael Mery
                                37 th Judicial District Court
                                Bexar County, Texas

Previous Attorney Appellant     Appellant has represented himself pro se since
                                December 14, 2013. His previous counsel was:

                                L. Terry George died on June 29, 2014.
                                Fort Worth, Texas

                                Jay R. Petterson
                                Jay R. Petterson, Attorney at *Law*, PLLC
                                12274 Bandera Road, Suite 210
                                Helotes, Texas 78023

                                Kathleen A. Cassidy Goodman
                                Law Office of Kathleen Cassidy Goodman
                                12274 Bandera Road, Suite 210
                                Helotes, Texas 78023

                                Richard H. Sommer
                                8610 N. New Braunfels Ave., Suite
                                309 San Antonio, Texas 78217

                                Robert W. Wachsmuth
                                Zachary J. Fanucci
                                Robert Wachsmuth & Associates
                                9311 San Pedro, Suite 707
                                San Antonio, Texas 78216

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES …………………… . ...... ................................,,,,….i

TABLE OF CONTENTS…………………… . ...... ...............................iv

TABLE OF AUTHORITIES …………..……… . ...... .......................... vi

INTRODUCTION .................................................................1

RESPONSE TO BACKGROUND .................................................1

ARGUMENT AND AUTHORITIES ..............................................4

ISSUE1 ...........................................................................4

> The Appellate Court errored when the Court declared that the trustee has exclusive standing to assert legal claims belonging to the 2013-CI-18355 case ("Defamati0n Trial Case") because it was a non-core proceeding, not in the Bankruptcy Court's jurisdiction to make a judgment and not was not in accordance with the Constitution of the United States.

ISSUE 2 .............................................................................15

> The Appellate Court errored when the court it is relied on *In re Croft* 737 F 3d. 372, 376-77 (5th Cir. 2013)( per curiam) because all the circumstances of this case were not the same (core, non-core) and the appeal at no benefit a to the estate.

ISSUE 3 .............................................................................16

> The bankruptcy order entitled "Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Actions" should be declared null and void thus the Trustee does not have standing in this Appeal.

Order of Sale On Appeal.................................................17

Fourteenth Amendment to the Constitution of the United States..17

Sale Procedures And Boa Fide Purchaser
21U.S.C. § 853 (n)(6)(B)..........................................19

NO CONSIDERATION.....................................20

11U.S.C. § 554 ABANDONMENT...........................20

ISSUE 4...........................................................21

11U.S.C. § 1509 A foreign Corporation needs to register to
have Direct Access

CONCLUSION ........................................................23

PRAYER .............................................................24

VERIFICATION........................................................25

CERTIFICATE OF COMPLIANCE..............................25

CERTIFICATE OF SERVICE ...............................25

APPENDIX ..............................................................27
EXHIBITS
1.OPINION
2. ORDER AND MOTION OF 2013-CI-17516
3. CROFT'S BANKRU
PT PETITION 11-52905-CAG
4. TRANSCRIPT MOTION TO SELL BANKRUPT CASE 14-50980-CAG
5. EMAIL RW WACHSMUTH NOT NOTICED
6. EMAIL OF TRUSTEE THOMAS NO DISTRIBUTION
7. ORDER DENYING MOTION TO DISQUALIFY PUERTO VERDE
   LTD. TO MAINTAIN LAWSUIOT IN TEXAS

# INDEX OF AUTHORITIES

## CASES

*Abramowitz v. Palmer,*
999 F.2d 1274, 1277 (8th Cir. 1993)……………………………………………5,6

*Arbaugh* v. *Y & H Corp.,*
546 U. S. 500………………………………………………………………10

*Baumgartner v. Ford Motor Credit Co., Ltd*
 (W.D.Mo. 7-9-2007)……………………………………………..…5

*Fariasantos v. Rosenberg & Associates,*
 (E.D.Va. 2-27-2015) ………………………………………………18

*Freedom Path v. Lerner,*
(N.D.Tex. 2-24-2015)……………………………………………18

*Henderson* v. *Shinseki,*
562 U. S.428_ …………………………………………………………10

*In the Matter of CV,*
12-10542 (5th Cir. 1-7-2013)…………………………………………23

*In re Condor Ins. Ltd.,*
 601 F.3d 319, 324 (5th Cir. 2010)……………………………………23

*In Re C-Power Prods., .Inc,*
 230 B.R. 800,803 …………………………………………………16

*In re Croft*
737 F 3d. 372, 376-77 (5th Cir. 2013)( per curiam) …………………14

In Re Dewsnup,
908 F.2d 588 (10th Cir. 1998)…………………………………………20

*IN Re Marshall,*
600 F3d. 1037,1047 (9th Cir 2010)……………………………………12

*In re Wood,*
825 F.2d 90, 97 (5th Cir. 1987)................................................6,12

*Joseph v, Hess Oil V.I. Corp.,*
651 F.3d 348, 351 (3d Cir. 2011) ................................22

*Latshaw v. Johnston,*
167 F.3d 208 (5th Cir. 1999).................................18

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
458 U. S. 50.................................................8,10,11

*Pacor, Inc. v. Higgins,*
743 F.2d 984, 994 (3d Cir. 1984)..............................6

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp..*
614 F. 3d 57, 84 (3d Cir. 2010). .............................23

*Scurlock Oil Co. v. Smithwick,*
724 S.W.2d 1 (Tex. 1986)...................................17

*Specialty Mills v. Citizens State Bank,*
51 F.3d 770, 773 (8th Cir. 1995)...........................5,6,16

*Stern v Marshall,*
131 S.Ct 2594 (2011)......................................6,12

*Stern v. Marshall,*
01- 02-00114- CV  (Tex,App.-Houston[1st Dist.] 7-14-2015) .................12

*Tex. Ass'n ofBus. v. Tex. Air Control Bd.,*
852 S.W.2d 440, 444-45 (Tex. 1993)................................22

*U.S. Home Corporation v. Settlers Crossing*
(D.Md. 8-14-2012)....................................22

*United States v. Brown,*
509F.Supp.2d 1239, 1246 (M.D. Fla. 2007).........................19

*United States v. Cox,*

575F.3d352, 356 (4th Cir. 2009)..................................................19

*United States v. Reckmever,*
836 F.2d200, 208 (4th Cir. 1987) ..............................................19

*USA v. Real Property, Located at 246 Main Street,*
*Dansville, Livingston Co., NY*
 (M.D.Fla. 7-13-2015) ..........................................................19

## STATUTES

Article III of the Constitution of the United States.................4,10.11,12,17

Bankruptcy Act of 1978..........................................................11

Fourteenth Amendment to the Constitution of the United States..................17

11 U.S.C. § 363 .................................................................19

11U.S.C. § 544.................................................................17, 20

11 U. S. C. § 1509 ...........................................................17, 21

21U.S.C. § 853 ...............................................................9, 17

28 U.S.C. § 157 ..........................................5,6,7,8,9,10,11, 14

## RULES

Federal Rule of Evidence 701..................................................18

Tx. R. APP. P. 8.2 ...........................................................15

To The Honorable Fourth Court of Appeals:

Burton Kahn (Kahn") ("Appellant") files this Motion For Rehearing and Reinstatement in accordance with Tex.R.App.P. 49.1and in support would show the Court as follows:

I;
## INTRODUCTION

Appellant, Kahn seeks the panel to review of the opinion in this case issued on August 19, 2015. The panel that rendered judgment in this case consisted of Marialyn Barnard, Justice, Patricia O. Alvarez, Justice and Jason Pulliam, Justice. The opinion was authored by the Honorable Marialyn Barnard , Justice. A copy of the opinion is attached as **Exhibit 1**.

## RESPONSE TO BACKGROUND

*1. Kahn was the president, secretary, and sole director of Helvetia from October 2009 until he was terminated in August 2013.*

Kahn was never terminated because he never worked for Robert Ripley nor did he have any contract with Robert Ripley. Kahn was the one third owner of the Corporation named Joabert Development Company. **(5RR 343-345)**

*2. Upon discovering what Kahn was doing, Helvetia filed suit to set aside the deeds. The trial court ordered the deeds set aside and thereafter, on November 4, 2013,*

Puerto Verde Ltd. in the name of Helvetia filed suit.

1

*3. The trial court granted the ex parte order based on documents filed by Kahn, who claimed to be acting as president and authorized representative of Helvetia.*

Kahn was the president and or visit authorized representative of Helvetia as per the Secretary of State. (Except for period September 27, 2013 to October 4, 2013) **(5RR131-136, 213)** The ex parte order .**(5RR 160-161)** is a ministerial act and does not make any findings as to any underlying claims of the parties.

*4. Kahn failed to disclose, however, that in the prior litigation filed by Helvetia in October 2013, another trial court had declared as fraudulent the deeds Kahn transferred to Paradiv, determining Kahn had no authority to act on behalf of Helvetia.*

There is no evidence that Kahn's attorney Jay Petterson what conversations had with Judge Gabriel and the finding was purely a ministerial act and it would not of have made any difference.

The court does not declare as fraudulent the deeds. Order of 2013-CI-17516 **Exhibit 2 ((Appellate case 04-14-00357CV) (5RR 128-139)** states: that the deeds are not created by implied or express consent or agreement of the obligor debtor or owner of the real property or by implied or express consent or agreement of an agent to insure rather represented of that person it does state that the Court does not grant parity any interest in the property. The Court states that it makes no finding

2

as to any underlying claims of the parties involved and expressly limits its finding of fact and law of a ministerial act.

Kahn formed Paradiv to prevent Robert Ripley a non-owner of Joabert to prevent a takeover of Robert Ripley. The funds that Paradiv would receive would go to Helvetia.

*5. After an evidentiary hearing in December 2013, the trial court overturned its prior order, finding Kahn made false claims in order to secure the prior order.*

The hearing of December 9 through 11 was a temporary injunction hearing not evidentiary hearing. The Supplement Temporary Injunction Order **(5RR322-330)** on page 333 only that it is **probable** that Kahn the made false claims not finding.

*6. After another evidentiary hearing, the trial court imposed sanctions against Kahn. The trial court found, among other things, that Kahn did not own Helvetia or its stock.*

There was no evidentiary hearing it was a sanction hearing. The Court stated that she would not hear any evidence in regarding ownership The Final Judgment And Sanction Order ("Sanction Order") **(5RR255-284)** never states specifically that Kahn did not own the shares of Helvetia only applies dicta.

*7. Rather, the trial court determined the sole owner of Helvetia is Puerto Verde, Ltd. ("Puerto Verde"), which is owned by Robert Ripley.*

3

The sanction order never specifically states that the sole owner of Helvetia is Puerto Verde. The finding implies that the self serving handwritten note on an e-mail address to Kahn was the document proving ownership. The Sanction Order neglects to say that the document does not mention Helvetia only Holdco and that the document was not presented at the ex parte motion of case 2003-CI-17516 (5RR 347-371) as proof of ownership and the document was not known to Robert Ripley and the Bank Trust Officer as late as 2008.**(5RR 18)**

*8. Kahn raises numerous issues challenging the trial court's judgment. In response, Helvetia contends, among other things, that this court must dismiss Kahn's appeal because we lack jurisdiction.*

The issue that a foreign Corporation not registered to the Secretary of State cannot maintain a lawsuit in Texas is paramount prior to the bankruptcy standings and should be addressed by either denying the issue or finding for Kahn not the foreigner Puerto Verde Ltd. (Bahamian).

## ARGUMENTS AND AUTHORITIES

## ISSUE 1

The Appellate Court errored when the Court declared that the trustee has exclusive standing to assert legal claims belonging to the 2013-CI-18355 case ("Defamati0n Trial Case") because it was a non-core proceeding, not in the Bankruptcy Court's jurisdiction to make a judgment and not was not in accordance with the Constitution of the United States.

4

On April 4, 2014, while case 2013-CI-18355 suit was pending, but prior to trial, Kahn filed a voluntary petition for bankruptcy, which immediately stayed the Defamation Trial Court proceedings. The Bankruptcy Court conducted a hearing on the lifting the automatic stay for the Defamation Trial Case on April 28, 2014 and granted the stay. The lifting of the stay relinquished the Bankruptcy's jurisdiction for the Defamation Trial Case. Thereafter, the case proceeded to jury trial. The cause of action was not listed on the bankruptcy schedules because it was purely defensive and that the Sanction Order purported that the shares were not Kahn's. The petition wass never reopened to include the Defamation Trial Case verdict. The Defamation Trial Case is non-core because it was only some what related to PVL's-Helvetia claim, and the resolution of the Trial case would have no bearing on the bankruptcy. In *Baumgartner v. Ford Motor Credit Co., Lld* (W.D.Mo. 7-9-2007) stated "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, "[c]ivil proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related proceedings." *Specialty Mills v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995); *Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993). A non-exhaustive list of "core proceedings" is enumerated at 28 U.S.C. § 157(b)(2). In general, "core

5

proceedings" are "those which arise only in bankruptcy or involve a right created by federal bankruptcy law." *Specialty Mills*, 51 F.3d at 773 (citing *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *see also* 28 U.S.C. § 157(b)(2). By contrast, "[n]on-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy." *Specialty Mills*, 51 F.3d at 773-74. In determining whether a case falls into the latter category, the Eighth Circuit has adopted the "conceivable effect" test developed by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984): The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy. . . .An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate. *Specialty Mills*, 51 F.3d at 74 (quoting *Pacor*, 743 F.2d at 994); *see also Abramowitz*, 999 F.2d at 1278 (interpretation of "related to" jurisdiction should promote judicial economy by facilitating resolution of all matters related to a bankruptcy case).

## I.

The Supreme Court Case of *Stern v Marshall*, 131 S.Ct 2594 (2011) is on point with the present Appeal.

6

Vickie filed suit against Pierce prior to her filing bankruptcy....

Pierce filed a proof of claim in that proceeding, asserting that he should be able to recover damages from Vickie's bankruptcy estate because Vickie had defamed him .

The Bankruptcy Court granted Vickie summary judgment on the defamation claim and eventually awarded her hundreds of millions of dollars in damages on her counterclaim. Pierce objected that the Bankruptcy Court lacked jurisdiction to enter a final judgment on that counterclaim because it was not a "core proceeding" as defined by 28 U.S.C. § 157(b)(2)(C). As set forth in § 157(a). Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those that are "related to a case under title 11." District courts may refer all such proceedings to the bankruptcy judges of their district, and bankruptcy courts may enter final judgments in "all core proceedings "arising under" title 11, or "arising in" a case under title 11." §§ 157(a), (b)(1). In non-core proceedings, by contrast, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court." § 157(c)(1). Section 157(b)(2) lists 16 categories of core proceedings, including "counterclaims by the estate against persons filing claims against the estate." § 157(b)(2)(C).

The Bankruptcy Court lacked jurisdiction to enter a final judgment on that counterclaim because it was not a "core proceeding" as defined by 28 U.S.C. § 157(b)(2)(C). As set forth in § 157(a), Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those that are "related to a case under title 11." District courts may refer all such proceedings to the bankruptcy judges of their district, and bankruptcy courts may enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." §§ 157(a), (b)(1). In non-core proceedings, by contrast, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court." § 157(c)(1). Section 157(b)(2) lists 16 categories of core proceedings, including "counterclaims by the estate against persons filing claims against the estate." § 157(b)(2)(C).

The Bankruptcy Court concluded that Vickie's counterclaim was a core proceeding. The District Court reversed, reading this Court's precedent in *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U. S. 50, to "suggest[ ] that it would be unconstitutional to hold that any and all counterclaims are core." The court held that Vickie's counterclaim was not core because it was only somewhat related to Pierce's claim, and it accordingly treated the Bankruptcy Court's judgment as proposed, not final. Although the Texas state court had by that time conducted a jury trial on the merits of the parties' dispute and entered a judgment in

8

Pierce's favor, the District Court went on to decide the matter itself, in Vickie's favor. The Court of Appeals ultimately reversed. It held that the Bankruptcy Court lacked authority to enter final judgment on Vickie's counterclaim because the claim was not "so closely related to [Pierce's] proof of claim that the resolution of the counterclaim is necessary to resolve the allowance or disallowance of the claim itself." Because that holding made the Texas probate court's judgment the earliest final judgment on matters relevant to the case, the Court of Appeals held that the District Court should have given the state judgment preclusive effect.

*Held:* Although the Bankruptcy Court had the statutory authority to enter judgment on Vickie's counterclaim, it lacked the constitutional authority to do so. Pp. 6-38.

1. Section 157(b) authorized the Bankruptcy Court to enter final judgment on Vickie's counterclaim. Pp. 8-16.

 (a) The Bankruptcy Court had the statutory authority to enter final  judgment on Vickie's counterclaim as a core proceeding under § 157(b)(2)(C). Pierce argues that § 157(b) authorizes bankruptcy courts to enter final judgments only in those proceedings that are both core and either arise in a Title 11 case or arise under Title 11 itself. But that reading necessarily assumes that there is a category of core

9

proceedings that do not arise in a bankruptcy case or under bankruptcy law, and the structure of § 157 makes clear that no such category exists. Pp. 8-11.

(b) In the alternative, Pierce argues that the Bankruptcy Court lacked jurisdiction to resolve Vickie's counterclaim because his defamation claim is a "personal injury tort" that the Bankruptcy Court lacked jurisdiction to hear under § 157(b)(5). The Court agrees with Vickie that § 157(b)(5) is not jurisdictional, and Pierce consented to the Bankruptcy Court's resolution of the defamation claim. The Court is not inclined to interpret statutes as creating a jurisdictional bar when they are not framed as such. See generally *Henderson* v. *Shinseki*, 562 U. S. ___; *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500. Section 157(b)(5) does not have the hallmarks of a jurisdictional decree, and the statutory context belies Pierce's claim that it is jurisdictional. Pierce consented to the Bankruptcy Court's resolution of the defamation claim by repeatedly advising that court that he was happy to litigate his claim there. Pp. 12-16.

2. Although § 157 allowed the Bankruptcy Court to enter final judgment on Vickie's counterclaim, Article III of the Constitution did not. Pp. 16-38.

(a)     Article III is "an inseparable element of the constitutional system of checks and balances" that "both defines the power and protects the independence of the

10

Judicial Branch." *Northern Pipeline*, 458 U. S., at 58 (plurality opinion). Article III protects liberty not only through its role in implementing the separation of powers, but also by specifying the defining characteristics of Article III judges to protect the integrity  of judicial decision making..

This is not the first time the Court has faced an Article III challenge to a bankruptcy court's resolution of a debtor's suit. In *Northern Pipeline*, the Court considered whether bankruptcy judges serving under the Bankruptcy Act of 1978 — who also lacked the tenure and salary guarantees of Article III — could "constitutionally be vested with jurisdiction to decide [a] state-law contract claim" against an entity that was not otherwise part of the bankruptcy proceedings. *Id.*, at 53, 87, n. 40 (plurality opinion). The plurality in *Northern Pipeline* recognized that there was a category of cases involving "public rights" that Congress could constitutionally assign to "legislative" courts for resolution. A full majority of the Court, while not agreeing on the scope of that exception, concluded that the doctrine did not encompass adjudication of the state law claim at issue in that case, and rejected the debtor's argument that the Bankruptcy Court's exercise of jurisdiction was constitutional because the bankruptcy judge was acting merely as an adjunct of the district court or court of appeals. *Id.*, at 69-72; see *id.*, at 90-91 (Rehnquist, J., concurring in judgment). After the decision in *Northern Pipeline*, Congress revised the statutes governing bankruptcy jurisdiction and bankruptcy

judges. With respect to the "core" proceedings listed in § 157(b)(2), however, the bankruptcy courts under the Bankruptcy Amendments and Federal Judgeship Act of 1984 exercise the same powers they wielded under the 1978 Act. The authority exercised by the newly constituted courts over a counterclaim such as Vickie's exceeds the bounds of Article III. Pp. 16-22. *Stern* P. 1-4.

The Appellate Court in *IN Re Marshall*, 600 F3d. 1037,1047 (9th Cir 2010) concluded that Vickie Lynn Marshall's counterclaim was a non-core proceeding because it was some what related and the Court found for Peirce. The Supreme Court in *Stern* affirmed the opinion of the 9th Cir. A recent Texas Case *Stern v. Marshall*, 01- 02-00114- CV (Tex,App.-Houston[1st Dist.] 7-14-2015) also affirmed that Vickie's counterclaim was anon-core proceeding. The Houston Court visited the core and non-core proceedings and found the same results.

## II.

In this appeal the Defamation Trial claim: is not arising; nor arising under nor related to as described by *In Re Wood*, 825 F.2d 90,97 (5th Cir. 1987), "[28] As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof

of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding. [29] Finally, the interpretation of core proceeding based on its equation with "arising under" and "arising in" proceedings comports with the interpretation suggested by *Marathon.* Justice Brennan's description of "core" matters parallels that of matters "arising under" title 11 — matters invoking a substantive right created by federal bankruptcy law. Moreover, his comment that the matter could have proceeded absent the bankruptcy suggests a contrast with "arising in" proceedings — matters that could arise only in bankruptcy. [30] We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. The proceeding before us does not meet this test and, accordingly, is a non-core proceeding. The plaintiff's suit is not based on any right created by the federal bankruptcy law. It is based on state created rights.[fn34] Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court."

The Defamation trial case is simply a state contract action had there been no bankruptcy has proceeded in state court and therefore is a non-core proceeding and when the stay was lifted the Bankruptcy Court's jurisdiction to sell the non-core case's appeal rights was relinquished.

The bankruptcy Court issued "Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Actions " which is a Final Order on a non-core proceeding without submitting proposed findings of fact and conclusions of law to the district court." 28 § 157(c)(1). A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. The Bankruptcy Court did not submit proposed findings of fact and conclusions of law to the district court, which is contrary to Article III of the Constitution of the United States , *Stern v. Marshall*, supra, and such sale should be null and voided. Thus the Trustee does not have any authority to appear in the Appeal.

ISSUE 2

14

The Appellate Court errored when the court it is relied on *In re Croft* 737 F 3d. 372, 376-77 (5th Cir. 2013)( per curiam) because all the circumstances of this case were not the same (core, non-core) and the appeal at no benefit a to the estate.

*In re Croft* 737 F 3d. 372, 376-77 (5th Cir. 2013)( per curiam) Bradley Croft was involved in two lawsuits that ultimately resulted in sanctions against him and an award of attorney's fees in favor of his opponent. *Id.* at 374. Croft appealed those decisions to the Fourth Court of Appeals. Thereafter, Croft filed a voluntary bankruptcy petition. As required, the Appellate Court abated Croft's appeals because of the automatic bankruptcy stay. *Id.; see Tx.* R. APP. P. 8.2 (stating bankruptcy suspends appeal). In response, Croft filed a motion in the bankruptcy court seeking to lift the automatic stay and allow the appeals to continue. *Id.* Croft's motion was opposed under the theory that Croft's right to appeal was part of the bankruptcy estate and only the trustee could prosecute the appeals. *Id*

Croft appeal was filed on August 5, 2011, before Croft filed bankruptcy on August 24, 2011 listing the creditors of the Sanction Orders. **Exhibit 3 (**Original Schedules of Croft from Bankruptcy case 11-52905cag) By listing the creditors of the sanction order Croft made the suits a core proceedings. Kahn agrees with the District Court and the Fifth Circuit that a successful Appeal would have reduced Crofts debt. This would modify a Crofts debt and would be a core proceeding under the Related definition of

core proceedings. The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy. . . .An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate. *Specialty Mills*, 51 F.3d at 74

Kahn's debt from the Defamation trial case was adjudged after the bankruptcy petition was filed. As briefed in Issue 1 the case is a non-core proceeding and not in the jurisdiction of the bankruptcy court to sell its appeal rights. A successful appeal of the Defamation trial case will not effect the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate.

The marked difference between Kahn and Croft is that Kahn is non-core and Croft is Core. Kahn agrees with the Court that the case of *In Re C-Power Prods., .Inc*, 230 B.R. 800,803 the malpractice claim was directly related to the bankruptcy and is a core proceeding.

## ISSUE 3

The bankruptcy order entitled "Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Actions" should be declared null and void thus the Trustee does not have standing in this Appeal.

16

The "Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Actions'("Sales Order") should be declared null and void for the following reasons:

## I.

## Order of Sale On Appeal

The motion for sale to sell is currently on appeal in the United States District Court for the Western District of Texas case number SA-14-CA- 1109. There are several issues of Law to be reviewed *de novo*: (A)Article III of the Constitution of the United States;(B) Fourteenth Amendment to the Constitution of the United States;.(C)11U.S.C. § 1509 A foreign Corporation needs to register to have Direct Access;(D) Sale procedures and bona fide purchaser 21U.S.C. § 853 (n)(6)(B); ;(E).11U.S.C. § 544 abandonment, Based on the In *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1 (Tex. 1986) "t a judgment is final for the purposes of issue and claim preclusion "despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." The Sales Order is not a final as per *Scurlock Oil Co* and collateral estoppel of the Sales Order is not applicable at this time. thus the Trustee does not have standing in this Appeal

## II..

## Fourteenth Amendment to the Constitution of the United States

17

The Bankruptcy Court did not allow Kahn to testify as to the value of the Joabert property **Exhibit 4** (Transcript of Motion to Sell Hearing on October 15, 2014 in Bankruptcy Case 14-50980-cag) P.92 (A violation of Kahn's Fourteenth Amendment rights) and Court declared value to be zero. Kahn is an 1/3 owner and a Professional Engineer, licensed in the State of Texas, who designed the project and was the President of the contractor. Kahn has knowledge of the property and is an expert witness. *Fariasantos v. Rosenberg & Associates*, (E.D.Va. 2-27-2015) based on Federal Rule of Evidence 701, stated, "most courts have permitted the owner or officer of a business to testify to the value . . . of the business, without the necessity of qualifying the witness... by virtue of his or her position in the business." In Kahn's case 2013-CI-17012 ("Joabert Case") First Amended Original Petition Request For Appointment Of Commissioners, Alternative Request For Appointment Of Receiver," a sworn petition has included on page 13 an detail analysis of each section of the property and an estimate of the cost to complete. The Bankruptcy Court would not allow Kahn to testify. Kahn's testimony would have been enough detail to show the worth of the Joabert property and as such that Kahn's value would exceed his debts and the sale would not have been approved. Appellee did not file an answer to the amended petition which is uncontroverted . In *Freedom Path v. Lerner*, (N.D.Tex. 2-24-2015) "a court .... must accept as true the uncontroverted allegations in the complaint and

18

resolve in favor of the plaintiff any factual conflicts posed by the affidavits. *Latshaw v. Johnston*, 167 F.3d 208 (5th Cir. 1999). If Kahn had testified and showed the value of Joabert exceeded the would have exceeded the debt, the Sales Order would not have been approved. Thus the Trustee does not have standing in this Appeal.

## III

### Sale Procedures And Bona Fide Purchaser 21 U.S.C. § 853 (n)(6)(B);

11 U.S.C. § 363 requires notice prior to sale. Robert Wachsmuth a creditor did not get notice of the sale or hearing date. **Exhibit** 5(Email) This violation makes the sale null and void.

11 U.S.C. § 363 (m) (n) requires the sale to be a good faith. The sale was to one of the creditors Helvetia who claimed 97% of the debt. Therefore with the price of $10,000 Helvetia would get distributed back $9700, or only cost $300. In *USA v. Real Property, Located at 246 Main Street, Dansville, Livingston Co., NY* (M.D.Fla. 7-13-2015) states:

> "Although we have not previously addressed this question, we agree with the majority view that unsecured or general creditors cannot be considered bona fide purchasers for value within the meaning of § 853(n)(6)(B)."); *United States v. Reckmeyer*, **836 F.2d 200, 208** (4th Cir. 1987) (stating that the term includes "all persons who give value . . . **in** an arms-length transaction with the expectation case "was paid for the rendition that they would receive equivalent value in return."). While "a person who receives property subject to forfeiture as a 'gift' cannot be

19

a bona fide purchaser for value," *United States v. Brown,* **509 F.Supp.2d 1239, 1246** (M.D. Fla. 2007), the term "bona fide purchaser for value must be construed liberally to include all persons who give value . . . in an arms-length transaction with the expectation that they would receive equivalent value in return." *United States v. Cox,* **575 F.3d 352, 356** (4th Cir. 2009)

The sale was not to a bona fide purchaser and was not an arms length transaction and not in good faith.

## NO CONSIDERATION

The Motion to Sell was granted but the Trustee did not distribute the funds. **Exhibit 6.**(E mail) The sale is not complete until the funds are distributed. This violation makes the sale null and void until funds are distributed. Thus at present time, the Trustee does not have standing in this Appeal until he distributes the funds.

## 11 U.S.C. § 554 ABANDONMENT

The hearing on the Motion to Sell was on October 15, 2014. Transcripyt of that hearing is **Exhibit 4**. The Court on pages 43, 45 and 93 stated that the value of 2013-CI-18355 and its Appeal Case 05-14-00568-CV are worth zero. The Trustee stated on page 17 and 21 that the litigation of these claims is totally unreasonable.

11 U.S.C. § 554 states: the trustee may abandon any property of the estate that is burdensome to the estate that is in consequential value and

20

benefit to the estate. By the Trustee and the Court finding no value the of the causes they are abandon and reverts to the debtor and stands as if no bankruptcy petition was filed. In Re Dewsnup, 908 F.2d 588 (10th Cir. 1998) Therefore Kahn owns the cause of action and the Trustees has no standing in the appeal.

## ISSUE 4

## 11U.S.C. § 1509 A foreign Corporation needs to register to have Direct Access

Registration for a foreign Corporation is a very important issue. A Foreign Corporation can camouflage their operations and can avoid taxes and enable illegal activities such as money laundering and terrorist activities.

Helvetia Asset Recovery, Inc. ("Helvetia"), creditor and party-in-interest, is a misnomer. Helvetia is a Texas Corporation. Burton Kahn ("Kahn") is president of that corporation per Secretary of State. (Except for period September 27, 2013 to October 4, 2013) **(5RR131-136, 213)** . Record in Case 2013-CI-18394 and Appeal 4-14-00357-CV (5RR365). This Appeal of Case 2013-CI-18355 was to determine who owns the shares of Helvetia. The real party in interest is Puerto Verde, Ltd a Bahamian Corporation ("PVL") Robert Ripley testified that he is President of PVL and claims that PVL owns the shares of Helvetia. The ownership of Helvetia's stock was decided without litigation or jurisdiction in

21

the Final Judgment and Sanction Order dated April 1, 2014. 11 U. S.C. § 1509 requires that a foreign corporation have a Right Direct access. .A Motion to Disqualify Puerto Verde Ltd. To Have Direct Access to this Court. (a) A foreign representative may commence **a** case under section 1504 by filing directly with the court a petition for recognition of a foreign proceeding under section 1515. However no such request has been made. PVL does not have standing in this court and standing is a component of subject matter *jurisdiction. Tex. Ass'n ofBus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). Because subject matter jurisdiction is essential to the authority of a court to decide a case, it will cannot be waived and may be raised for the first time on appeal. Thus all judgments in thus case and in other related cases are void and there is no debt to Helvetia /PVL. The bankruptcy court's order in Denying the Motion to Disqualify Puerto Verde Ltd. To Maintain A Lawsuit was based sole on good cause and this Court should not allowed the Order as collateral estoppel **(ECF No. 45) (Bankruptcy Court Case 14-50980-cag) Exhibit 7** states for the reason of denial, **good cause** without having any evidence or reasons to dispute these motions. This is not allowed per In *U.S. Home Corporation v. Settlers Crossing* (D.Md. 8-14-2012). . "Good cause' is understood to mean '[a] legally sufficient reason,' and it reflects 'the burden placed on a litigant to show why a request should be granted or an action excused." *Joseph v, Hess Oil V.I. Corp.*, 651 F.3d

22

348, 351 (3d Cir. 2011) (quoting Blacks Law Dictionary 251 (9th ed. 2009)). The "good cause" inquiry "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*. 614 F. 3d 57, 84 (3d Cir. 2010).

In *In the Matter of CV*, 12-10542 (5th Cir. 1-7-2013) states:

> "Chapter 15 provides for a broad range of relief. This includes the ability to sue and be sued in United States courts, to apply directly to a United States court for relief, to commence a non-Chapter 15 case, and to intervene in any United States case to which the debtor is a party. *In re Condor Ins. Ltd.*, 601 F.3d 319, 324 (5th Cir. 2010)"

The process in the federal system chapter 15 requires a Court order and hearing for a foreign Corporation needs to register to have Direct Access and that the corporation shall met specific requirements. Texas only requests filing a registration form and a fee. However PVL has done neither and that PVL should not be able to sue or be sued. Thus the Sales Order is null and void and the Trustee does not have standing in this Appeal.

## CONCLUSION

The Appellant has shown that this motion that the "Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Actions' should be declared null and void for the following reasons: the order was in violation of Article III of the Constitution of the United States; the 14th

23

amendment to the Constitution of the United States; the order his untimely because of appeal which will be reviewed as de novo; sales procedures such as notice and consideration and a bona fide purchaser and the abandonment of the cause of action making the cause of action revert back to Kahn.

The trustee does not have standing in this appeal.

## PRAYER

Appellant, Burton Kahn is an American Citizen, born in Brooklyn, New York in 1933 from parents that were both born in Brooklyn, New York in 1904 and served his country in the United States Army for two deployments, moved to Texas in 1977 and desires justice and his rights as an U.S. Citizen, which has been deprived in favor of Appellee, who is a Canadian citizen living in Columbia South America, banks in the Bahamas with secret accounts and does not pay United States Taxes. For the reasons above Appellant prays that this Appellate Court find that this Motion for Rehearing is Granted and that this Honorable Court find that the Appellant is entitled to a new Trial.

Respectfully Submitted

Burton Kahn Pro-se
1706 Alpine Cir.,
San Antonio, TX 8248
glentrailyahoo.com

24

Tel (210) 408-9199

## VERIFICATION

State of Texas       §

County of Bexar       §     Tex. Civ. Prac. & Rem. Code §132.001

My name is Burton Kahn. I am over the age of 18 and am fully competent to make this unsworn declaration. My date of birth is in August 1933 and my address is 1706 Alpine Circle, San Antonio, Texas 78248. I declare under penalty of perjury that the foregoing is true and correct and the Exhibits presented are the true and correct copies of the record. Executed in Bexar County, State of Texas on the day of September 2, 2015.

Burton Kahn

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4(e), (i)

This motion complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(1) because, according to the Microsoft Word 2010 word count function, it contains 5,848 words on pages 1-26, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(e)(1)(1).

This notion complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 software in Times New Roman 14 point font in text.

Burton Kahn

## CERTIFICATE OF SERVICE

I certify that a copy of this Motion was served on Appellee Helvetia Asset Recovery Inc. through counsel of record on September 2, 2015 by

Burton Kahn

Via Email
Elizabeth Conry Davidson, Attorney at Law
926 Chulie Drive
San Antonio, Texas 78216
(210) 380-4899 telephone
(210) 225-2300 facsimile
conrydavidson@gmail.com

APPENDIX

EXHIBITS

1.OPINION

2. ORDER AND MOTION OF 2013-CI-17516

3. CROFT'S BANKRU

PT PETITION 11-52905-CAG

4.  TRANSCRIPT MOTION TO SELL BANKRUPT CASE 14-50980-CAG

5. EMAIL RW WACHSMUTH NOT NOTICED

6. EMAIL OF TRUSTEE THOMAS NO DISTRIBUTION

7. ORDER DENYING MOTION TO DISQUALIFY PUERTO VERDE

   LTD.  TO MAINTAIN LAWSUIOT IN TEXAS

**EXHIBIT 1**



# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00569-CV

Burton KAHN,
Appellant

v.

## HELVETIA ASSET RECOVERY, INC.,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-18355
Honorable Michael E. Mery, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:   Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  August 19, 2015

DISMISSED FOR WANT OF JURISDICTION

A jury found appellant Burton Kahn ("Kahn") breached his fiduciary duty to appellee Helvetia Asset Recovery, Inc. ("Helvetia"), used another company to perpetrate a fraud for his benefit, retained money belonging to Helvetia, slandered Helvetia's title to certain real property, and filed fraudulent court records against real property owned by Helvetia. The jury awarded sizeable actual damages as well as punitive damages and attorney's fees. The trial court rendered a judgment based on the jury's verdict and granted Helvetia a permanent injunction to preclude Kahn from interfering in Helvetia's business. On appeal, Kahn raises numerous issues challenging

the judgment. However, because Kahn lacks standing to prosecute this appeal, we have no jurisdiction and dismiss the appeal.

## BACKGROUND

Given our disposition of the appeal, a detailed rendition of the facts is unnecessary. Accordingly, we provide only a brief factual and procedural statement for context.

Helvetia is a company that owns and sells real estate lots to builders in San Antonio. Kahn was the president, secretary, and sole director of Helvetia from October 2009 until he was terminated in August 2013. After he was terminated, Kahn began to take actions detrimental to Helvetia, including transferring by deed numerous properties owned by Helvetia to a company created by Kahn after his termination – Paradiv Corporation. Upon discovering what Kahn was doing, Helvetia filed suit to set aside the deeds. The trial court ordered the deeds set aside and thereafter, on November 4, 2013, Helvetia filed a suit against Kahn alleging numerous causes of action based on Kahn's activities after his termination.[1]

---

[1] The day after Helvetia filed suit, Kahn also filed suit, seeking to set aside several deeds from Helvetia to certain buyers ("the Lien Case"). Kahn claimed the deeds from Helvetia to the buyers were fraudulent. Initially, the trial court granted the relief sought by Kahn, rendering an ex parte temporary restraining order. Kahn filed that order in the deed records, thereby clouding Helvetia's title. The trial court granted the ex parte order based on documents filed by Kahn, who claimed to be acting as president and authorized representative of Helvetia. Kahn failed to disclose, however, that in the prior litigation filed by Helvetia in October 2013, another trial court had declared as fraudulent the deeds Kahn transferred to Paradiv, determining Kahn had no authority to act on behalf of Helvetia. After Helvetia discovered what Kahn had done, Helvetia filed a motion to set aside the trial court's order, advising the trial court of the prior ruling and seeking injunctive relief to preclude Kahn from interfering with Helvetia's business or holding himself out as an authorized representative. After an evidentiary hearing in December 2013, the trial court overturned its prior order, finding Kahn made false claims in order to secure the prior order. The trial court enjoined Kahn from acting on behalf of Helvetia in the future.

In addition to seeking to set aside the trial court's order in the Lien Case, Helvetia sought sanctions against Kahn. After another evidentiary hearing, the trial court imposed sanctions against Kahn. The trial court found, among other things, that Kahn did not own Helvetia or its stock. Rather, the trial court determined the sole owner of Helvetia is Puerto Verde, Ltd. ("Puerto Verde"), which is owned by Robert Ripley. Kahn appealed the sanctions order to this court. On July 22, 2015, this court dismissed Kahn's appeal for want of prosecution. *See In Re A Purported Lien or Claim Against Helvetia Asset Recovery, Inc.*, No. 04-14-00357-CV, 2015 WL 4479600, at *1–*2 (Tex. App.—San Antonio July 22, 2015, no pet. h.) (mem. op.).

On April 4, 2014, while Helvetia's suit was pending, but prior to trial, Kahn filed a voluntary petition for bankruptcy, which immediately stayed the trial court proceedings. However, the bankruptcy stay was lifted by order of the bankruptcy court on April 28, 2014. Thereafter, the case proceeded to trial.

Ultimately, the jury found Kahn breached his fiduciary duty to Helvetia, misappropriated funds from Helvetia, used Paradiv to perpetrate a fraud for his benefit, held money belonging to Helvetia, slandered Helvetia's title to certain real property, and filed a fraudulent court record or document against real property owned by Helvetia. The jury awarded damages for each claim. The jury also determined Kahn's breach of fiduciary duty and perpetration of fraud was committed "either maliciously, fraudulently, or through gross neglect," resulting in an award of punitive damages in favor of Helvetia in the amount of $900,000.00. Finally, the jury awarded trial and appellate attorney's fees. The trial court rendered judgment based on the jury's verdict and rendered a permanent injunction, precluding Kahn from interfering in Helvetia's business. Kahn perfected an appeal from the judgment.

## ANALYSIS

Kahn raises numerous issues challenging the trial court's judgment. In response, Helvetia contends, among other things, that this court must dismiss Kahn's appeal because we lack jurisdiction. More specifically, Helvetia contends that as a result of his decision to file a voluntary bankruptcy petition, Kahn has no standing to pursue this appeal because his appellate rights in this appeal vested with the bankruptcy trustee, who sold those rights to Helvetia in a sale approved by the bankruptcy court. Thus, before we can review any issues raised by Kahn, we must first determine whether he has standing to pursue this appeal.

### *Standard of Review & Relevant Law — Standing*

Standing is a component of subject matter jurisdiction that we review de novo. *Sneed v. Webre*, No. 12-0045, 2015 WL 3451653, at *7 (Tex. May 29, 2015) (citing *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993)). Standing is a constitutional prerequisite to maintaining suit. *Sneed*, 2015 WL 3451653, at *7 (quoting *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001)). In the absence of standing, a court lacks subject matter jurisdiction to hear the case. *Austin Nursing Ctr, Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Wolff v. Deputy Constables Ass'n*, 441 S.W.3d 362, 365 (Tex. App.—San Antonio 2013, no pet.).

As recently reiterated by the supreme court in *Sneed*, "[t]he issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." 2015 WL 3451653, at *7 (quoting *Lovato*, 171 S.W.3d at 848). In Texas, standing does not exists unless (a) there is a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought. *Id.* (quoting *Tex. Ass'n of Bus.*, 852 S.W.2d at 446) (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722, 724 (Tex. 1955)). A determination of standing focuses on whether a party has a "justiciable interest" in the outcome of the lawsuit, such as when it is personally aggrieved or has an enforceable right or interest. *Lovato*, 171 S.W.3d at 849 (citing *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)); *Wolff*, 441 S.W.3d at 365.

### *Application — Standing*

In this case, Helvetia contends Kahn lacks standing to prosecute this appeal as a result of his voluntary bankruptcy filing. According to Helvetia, Kahn's right to pursue this appeal vested in the bankruptcy trustee, who sold those rights to Helvetia — an action approved by the

- 4 -

bankruptcy court. Accordingly, Helvetia contends Kahn no longer has any right or interest in this appeal, and therefore, no standing to pursue it.

Filing a voluntary petition for bankruptcy creates a bankruptcy estate, which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *see Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999); *Rodriguez v. City of San Antonio*, 113 S.W.3d 378, 380 (Tex. App.—San Antonio 2003, pet. denied). This includes causes of action or legal claims that belonged to the debtor before the bankruptcy petition was filed. *Douglas*, 987 S.W.2d at 882. The bankruptcy trustee, as the representative of the bankruptcy estate, has exclusive standing to assert legal claims that become part of the estate. *Douglas*, 987 S.W.2d at 882; *Rodriguez*, 113 S.W.3d at 381. In other words, by voluntarily filing a bankruptcy petition, the bankruptcy debtor relinquishes to the trustee any standing to prosecute or dispose of the claims included in the estate. *Douglas*, 987 S.W.2d at 882; *Rodriguez*, 113 S.W.3d at 381.

It is not simply causes of action or claims that become part of the bankruptcy estate. The Fifth Circuit, applying Texas law, has specifically held that defensive appellate rights are property under Texas law and become part of the bankruptcy estate. *In re Croft*, 737 F.3d 372, 376–77 (5th Cir. 2013) (per curiam). As the court explained, "[w]hile it is true that a judgment against the debtor is an obligation and has no value to the estate—and would therefore not be included in a list of property—the right to appeal that judgment certainly has a quantifiable *value* to the debtor, and therefore constitutes property under Texas law." *Id.* (emphasis in original). Thus, property rights in a legal cause of action include not only the cause of action itself, but any appellate rights related thereto. *Id.* at 375.

We find the Fifth Circuit's decision in *Croft* instructive. In *Croft*, Bradley Croft was involved in two lawsuits that ultimately resulted in sanctions against him and an award of attorney's fees in favor of his opponent. *Id.* at 374. Croft appealed those decisions to this court.

*Id.* Thereafter, Croft filed a voluntary bankruptcy petition. *Id.* As required, we abated Croft's appeals because of the automatic bankruptcy stay. *Id.*; *see* TEX. R. APP. P. 8.2 (stating bankruptcy suspends appeal). In response, Croft filed a motion in the bankruptcy court seeking to lift the automatic stay and allow the appeals to continue. *Id.* Croft's motion was opposed under the theory that Croft's right to appeal was part of the bankruptcy estate and only the trustee could prosecute the appeals. *Id.*

The Fifth Circuit, applying Texas property law, held Croft's defensive appellate rights, allowing him to appeal the sanctions order and award of attorney's fees, became part of the bankruptcy estate when he filed the voluntary bankruptcy petition. *Id.* at 378. Accordingly, Croft no longer had standing to pursue the appeals because his defensive rights in the appeals were property of the bankruptcy estate and thus, the bankruptcy trustee had the right to sell the appellate rights pursuant to a bankruptcy court order of sale. *Id.*

Here, as described above, Kahn was involved in a lawsuit that ultimately resulted in the award of monetary damages against him, including punitive damages and attorney's fees. Kahn voluntarily filed a petition for bankruptcy, creating a bankruptcy estate. Thus, Kahn's legal claims, as well as his defensive appellate rights in this appeal, i.e., his right to appeal the judgment in this case, was a valuable property right that became part of the bankruptcy estate. *See id.* The bankruptcy court recognized that this appeal was part of the bankruptcy estate as demonstrated in its order entitled "Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Actions." In that order, the bankruptcy court specifically listed this appeal — or the rights to pursue it — among the assets the trustee was authorized to sell. The relevant portion of the order states:

> ORDERED that movant, Johnny W. Thomas, Trustee, be and is hereby authorized and directed to sell all property owned or claimed to be owned by the Debtor to include all the Debtor's non-exempt assets, claims and causes of action now

existing or hereafter arising, all rights, titles and interests in any business or business enterprise that currently exist or has ever existed to Helvetia Asset Recovery, Inc. or its assigns, for $10,000.00. This property includes, but is not limited to, the following:

\* \* \*

All claims or causes of action held by or for the debtor, including but not limited to the following:

\* \* \*

*Burton Kahn v. Helvetia Asset Recovery, Inc.*, No. 04-14-00569-CV, Fourth Court of Appeals, San Antonio, Texas.

The trustee, in order to maximize the estate's value, sold the defensive appellate rights to Helvetia, a sale that was approved by the bankruptcy court. Accordingly, we hold Kahn has no "justiciable interest" in this appeal as he has no enforceable rights therein. *See Sneed*, 2015 WL 3451653, at \*7; *Lovato*, 171 S.W.3d at 849; *Wolff*, 441 S.W.3d at 365. It therefore follows, and we hold, Kahn has no standing to pursue this appeal as that right has been sold as part of the estate by the trustee, who had exclusive standing to prosecute or dispose of the property of the bankruptcy estate. *See Croft*, 737 F.3d at 376–77; *Douglas*, 987 S.W.2d at 882; *Rodriguez*, 113 S.W.3d at 381.

In his reply brief, Kahn argues his defensive appellate rights in this appeal are not part of the bankruptcy estate because the trial court's judgment was rendered *after* the commencement of the bankruptcy proceeding. Thus, according to Kahn, the defensive appellate rights created by the judgment were not part of the bankruptcy estate. We disagree. Although this case is distinguishable from *Croft* because in *Croft*, the defensive appellate rights were created prior to the filing of bankruptcy, the bankruptcy code specifically states that any interest in property that the estate acquired *after* commencement of the case becomes property of the bankruptcy estate. 11 U.S.C. § 541(a)(7) (2015); *see In re C-Power Prods., Inc.*, 230 B.R. 800, 803 (Bankr. N.D.

Tex. 1998) (holding that not only pre-bankruptcy petition malpractice claim became property of bankruptcy estate, but post-bankruptcy petition malpractice claim likewise became property of bankruptcy estate.). Accordingly, we hold the fact that the trial court's judgment was not rendered until after the bankruptcy petition was filed is irrelevant. Kahn's defensive appellate rights in the appeal became a part of the bankruptcy estate whether they existed before or after the bankruptcy petition was filed by Kahn. *See* 11 U.S.C. § 541(a)(7); *C-Power Prods.*, 230 B.R. at 803.

## CONCLUSION

Based on the foregoing, we hold Kahn had no justiciable interest in the right to pursue this appeal. The defensive rights to this appeal became part of Kahn's bankruptcy estate, and the trustee was authorized to sell the rights pursuant to the bankruptcy court's order. Accordingly, we hold Kahn has no standing. Given Kahn's lack of standing, a component of subject matter jurisdiction, we hold we have no jurisdiction over this appeal. Accordingly, we dismiss the appeal for want of jurisdiction.

Marialyn Barnard, Justice



# Fourth Court of Appeals
## San Antonio, Texas

August 19, 2015

No. 04-14-00569-CV

Burton **KAHN**,
Appellant

v.

**HELVETIA ASSET RECOVERY, INC.**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-18355
Honorable Michael E. Mery, Judge Presiding

### ORDER

In accordance with this court's opinion of this date, this appeal is DISMISSED FOR WANT OF JURISDICTION.

We order that appellee Helvetia Asset Recovery, Inc. recover its costs of this appeal from appellant Burton Kahn.

It is so **ORDERED** on August 19, 2015.

_Marialyn Barnard_
Marialyn Barnard, Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 19th day of August, 2015.

_Keith E. Hottle_
Keith E. Hottle, Clerk

**EXHIBIT 2**


EXHIBIT
9

MISC. DOCKET NO. 2013-CI-17516

| | | |
|---|---|---|
| IN RE: A PURPORTED LIEN | § | IN THE DISTRICT COURT |
| OR CLAIM AGAINST HELVETIA | § | |
| ASSET RECOVERY, INC. | § | 438TH JUDICIAL DISTRICT |
| | § | |
| Property Owner | § | BEXAR COUNTY, TEXAS |
| | § | |

## JUDICIAL FINDING OF FACT AND CONCLUSION OF LAW REGARDING A DOCUMENT OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM

On the ___ day of **OCT 23 2013**_____, 2013, in the above entitled and numbered cause, this Court reviewed a motion, verified by affidavit, of Robert Ripley and the documentation attached thereto. Additionally, the Court reviewed the "Warranty Deed" and "Correction Warranty Deed" attached hereto. No testimony was taken from any party, nor was there any notice of the Court's review, the Court having made the determination that a decision could be made solely on review of the documentation under the authority vested in the Court under Subchapter J, Chapter 51 of the Texas Government Code.

The Court finds as follows: the Warranty Deed, attached hereto as Exhibit 1; the Revised Warranty Deed, attached hereto as Exhibit 2; and the Correction Warranty Deed, attached hereto as Exhibit 3 (collectively, the "Warranty Deeds"), are NOT created by implied or express consent or agreement of the obligor, debtor, or the owner of the real property or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person. The Warranty Deeds, attached hereto as Exhibits 1-3, do not grant Paradiv Corporation any interest in the property described therein.

The Court makes no finding as to any underlying claims of the parties involved, and expressly limits its finding of fact and conclusion of law to the review of a ministerial act. The

county clerk shall file this finding of fact and conclusion of law in the same class of records as the subject documentation or instrument was originally filed, and the court directs the county clerk to index it using the same names that were used in indexing the subject documentation or instrument.

Signed on this the ____ day of OCT 2 3 2013 _____.

_____
DISTRICT JUDGE

Bexar County, Texas

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

**SCANNED**

# WARRANTY DEED

**Grantor :**   **HELVETIA ASSET RECOVERY, INC.**
BEXAR COUNTY TEXAS

**GRANTEE :**   PARADIV CORPORATION
BEXAR COUNTY, TEXAS

PI2-20130205231-3

Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT 1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 .
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 ,
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK 4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 .
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 ,

BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 ,
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 .
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 ,
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 ,
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

Book 16367   Page 870   3pgs

EXHIBIT 1

BLOCK 7 LOT 44 , BLOCK 7 LOT 45 , BLOCK 7 LOT 46 , BLOCK 7 LOT 47 , BLOCK 7 LOT 48 ,
BLOCK 7 LOT 49 , BLOCK 7 LOT 50 , BLOCK 7 LOT 51 , BLOCK 7 LOT 52 , BLOCK 7 LOT 53 ,
BLOCK 7 LOT 54 , BLOCK 7 LOT 55 , BLOCK 7 LOT 56 , BLOCK 7 LOT 57 , BLOCK 7 LOT 58 ,
BLOCK 7 LOT 59 , BLOCK 7 LOT 60 , BLOCK 7 LOT 61 , BLOCK 7 LOT 62 , BLOCK 7 LOT 63 ,
BLOCK 7 LOT 64 , BLOCK 7 LOT 65 , BLOCK 7 LOT 66 , BLOCK 8 LOT 1 ,

BLOCK 8 LOT 2 , BLOCK 8 LOT 3 , BLOCK 8 LOT 4 , BLOCK 8 LOT 5 , BLOCK 8 LOT 6 ,
BLOCK 8 LOT 18 , BLOCK 8 LOT 19 , BLOCK 8 LOT 20 , BLOCK 8 LOT 21 , BLOCK 8 LOT 22 ,
BLOCK 8 LOT 23 , BLOCK 8 LOT 24 , BLOCK 8 LOT 25 , BLOCK 8 LOT 26 , BLOCK 8 LOT 27 ,
BLOCK 8 LOT 28 , BLOCK 8, LOT 29 , BLOCK 8, LOT 30 , BLOCK  8,  LOT 31 , BLOCK 8, LOT
32 , BLOCK  8, LOT 33 , BLOCK 8, LOT 34 ,

BLOCK 9 LOT 1 , BLOCK 9 LOT 2 , BLOCK 9 LOT 3 , BLOCK 9 LOT 4 , BLOCK 9 LOT 5 ,
BLOCK 9 LOT 6 , BLOCK 9 LOT 7 , BLOCK 9 LOT 8,  BLOCK 9 LOT 9 , BLOCK 9 LOT 10 ,
BLOCK 9 LOT 11 , BLOCK 9 LOT 12 , BLOCK 9 LOT 13 , BLOCK 9 LOT 14 , BLOCK 9 LOT 15
, BLOCK 9 LOT 16 , BLOCK 9 LOT 17 , BLOCK 9 LOT 18, , BLOCK 9 LOT 19 , BLOCK  9 LOT
20 , BLOCK 9 LOT 21 , BLOCK 9 LOT 22 , BLOCK 9 LOT 23 , BLOCK 9 LOT 24 , BLOCK 9
LOT 25 , BLOCK 9 LOT 26 , BLOCK 9 LOT 27 , BLOCK 9 LOT 28,  BLOCK 9 LOT 29 , BLOCK
9 LOT 30 , BLOCK 9 LOT 31 , BLOCK 9 LOT 32 , BLOCK 9 LOT 33 , BLOCK 9 LOT 34 ,
KEY LARGO SUBDIVISION CB 05065 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN
VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:
    Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently
recorded instruments, other than liens and conveyances, that affect the property; taxes for the current
year, the payment of which Grantee assumes.

    Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations
from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property,
together with all and singular the rights and appurtenances thereto in any wise belonging to have and
hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor
binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever
defend all and singular the property to Grantee and Grantee's heirs, executors; administrators,
successors and assigns against every person whomsoever lawfully claiming or to claim the same or any
part thereof, except as to the reservations from and exceptions to conveyance and warranty.

    When the context requires, singular nouns and pronouns include the plural.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT
                    ACKNOWLEDGMENT

This instrument was acknowledged before me on September 30, 2013 by Burton Kahn,
President, Helvetia Asset Recovery, Inc.

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law.

STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

**SEP 3 0 2013**

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20130205231 Fees: $24.00
09/30/2013   3:21PM # Pages 3
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# *REVISED* WARRANTY DEED

**Grantor :**   **HELVETIA ASSET RECOVERY, INC.**
BEXAR COUNTY TEXAS

**GRANTEE :**   PARADIV CORPORATION
BEXAR COUNTY, TEXAS



Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT 1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 .
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 ,
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK 4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 ,
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 ,

BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 .
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 ,
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 ,
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 ,
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

EXHIBIT 2

BLOCK 7 LOT 44, BLOCK 7 LOT 45, BLOCK 7 LOT 46, BLOCK 7 LOT 47, BLOCK 7 LOT 48, BLOCK 7 LOT 49, BLOCK 7 LOT 50, BLOCK 7 LOT 51, BLOCK 7 LOT 52, BLOCK 7 LOT 53, BLOCK 7 LOT 54, BLOCK 7 LOT 55, BLOCK 7 LOT 56, BLOCK 7 LOT 57, BLOCK 7 LOT 58, BLOCK 7 LOT 59, BLOCK 7 LOT 60, BLOCK 7 LOT 61, BLOCK 7 LOT 62, BLOCK 7 LOT 63, BLOCK 7 LOT 64, BLOCK 7 LOT 65, BLOCK 7 LOT 66, BLOCK 8 LOT 1,

BLOCK 8 LOT 2, BLOCK 8 LOT 3, BLOCK 8 LOT 4, BLOCK 8 LOT 5, BLOCK 8 LOT 6, BLOCK 8 LOT 18, BLOCK 8 LOT 19, BLOCK 8 LOT 20, BLOCK 8 LOT 21, BLOCK 8 LOT 22, BLOCK 8 LOT 23, BLOCK 8 LOT 24, BLOCK 8 LOT 25, BLOCK 8 LOT 26, BLOCK 8 LOT 27, BLOCK 8 LOT 28, BLOCK 8, LOT 29, BLOCK 8, LOT 30, BLOCK 8, LOT 31, BLOCK 8, LOT 32, BLOCK 8, LOT 33, BLOCK 8, LOT 34,

BLOCK 9 LOT 1, BLOCK 9 LOT 2, BLOCK 9 LOT 3, BLOCK 9 LOT 4, BLOCK 9 LOT 5, BLOCK 9 LOT 6, BLOCK 9 LOT 7, BLOCK 9 LOT 8, BLOCK 9 LOT 9, BLOCK 9 LOT 10, BLOCK 9 LOT 11, BLOCK 9 LOT 12, BLOCK 9 LOT 13, BLOCK 9 LOT 14, BLOCK 9 LOT 15, BLOCK 9 LOT 16, BLOCK 9 LOT 17, BLOCK 9 LOT 18,, BLOCK 9 LOT 19, BLOCK 9 LOT 20, BLOCK 9 LOT 21, BLOCK 9 LOT 22, BLOCK 9 LOT 23, BLOCK 9 LOT 24, BLOCK 9 LOT 25, BLOCK 9 LOT 26, BLOCK 9 LOT 27, BLOCK 9 LOT 28, BLOCK 9 LOT 29, BLOCK 9 LOT 30, BLOCK 9 LOT 31, BLOCK 9 LOT 32, BLOCK 9 LOT 33, BLOCK 9 LOT 34, KEY LARGO SUBDIVISION CB 05065 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:
Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors; administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT
ACKNOWLEDGMENT

This instrument was acknowledged before me on October 4, 2013 by Burton Kahn, President, Helvetia Asset Recovery, Inc.

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

OCT  4 2013



COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20138298748 Fees: $24.00
10/04/2013    12:38PM # Pages 3
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# CORRECTION
## WARRANTY DEED

Grantor: **HELVETIA ASSET RECOVERY, INC.**
BEXAR COUNTY TEXAS

GRANTEE: PARADIV CORPORATION
BEXAR COUNTY, TEXAS

Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT 1, BLOCK 3 LOT 2, BLOCK 3 LOT 3, BLOCK 3 LOT 4, BLOCK 3 LOT 5, BLOCK 3 LOT 6, BLOCK 3 LOT 7, BLOCK 3 LOT 8, BLOCK 3 LOT 9, BLOCK 3 LOT 10, BLOCK 3 LOT 11, BLOCK 3 LOT 12, BLOCK 3 LOT 13, BLOCK 3 LOT 16, BLOCK 3 LOT 17, BLOCK 3 LOT 18, BLOCK 3 LOT 19

, BLOCK 4 LOT 1, BLOCK 4 LOT 6, BLOCK 4 LOT 7, BLOCK 4 LOT 8, BLOCK 4 LOT 9, BLOCK 4 LOT 10, BLOCK 4 LOT 11, BLOCK 4 LOT 12, BLOCK 4 LOT 13, BLOCK 4 LOT 14, BLOCK 4 LOT 15, BLOCK 4 LOT 16, BLOCK 4 LOT 17, BLOCK 4 LOT 18, BLOCK 4 LOT 19, BLOCK 4 LOT 20, BLOCK 4 LOT 21, BLOCK 4 LOT 22, BLOCK 4 LOT 23, BLOCK 4 LOT 24, BLOCK 4 LOT 25, BLOCK 4 LOT 26, BLOCK 4 LOT 27, BLOCK 4 LOT 28

, BLOCK 5 LOT 1, BLOCK 5 LOT 2, BLOCK 5 LOT 3, BLOCK 5 LOT 4, BLOCK 5 LOT 5, BLOCK 5 LOT 6, BLOCK 5 LOT 7, BLOCK 5 LOT 8, BLOCK 5 LOT 9, BLOCK 5 LOT 10, BLOCK 5 LOT 11, BLOCK 5 LOT 12, BLOCK 5 LOT 13, BLOCK 5 LOT 14, BLOCK 5 LOT 15, BLOCK 5 LOT 16, BLOCK 5 LOT 17, BLOCK 5 LOT 18 BLOCK 5 LOT 19, BLOCK 5 LOT 20, BLOCK 5 LOT 21, BLOCK 5 LOT 22, BLOCK 5 LOT 23, BLOCK 5 LOT 24, BLOCK 5 LOT 25, BLOCK 5 LOT 26, BLOCK 5 LOT 27, BLOCK 5 LOT 28, BLOCK 5 LOT 29, BLOCK 5 LOT 30, BLOCK 5 LOT 31, BLOCK 5 LOT 32,

BLOCK 6 LOT 1, BLOCK 6 LOT 2, BLOCK 6 LOT 3, BLOCK 6 LOT 4, BLOCK 6 LOT 5, BLOCK 6 LOT 6, BLOCK 6 LOT 7, BLOCK 6 LOT 8, BLOCK 6 LOT 9, BLOCK 6 LOT 10, BLOCK 6 LOT 11, BLOCK 6 LOT 12, BLOCK 6 LOT 13, BLOCK 6 LOT 14, BLOCK 6 LOT 15, BLOCK 6 LOT 16, BLOCK 6 LOT 17, BLOCK 6 LOT 18, BLOCK 6 LOT 19, BLOCK 6 LOT 20, BLOCK 6 LOT 21, BLOCK 6 LOT 22, BLOCK 6 LOT 23, BLOCK 6 LOT 24, BLOCK 6 LOT 25, BLOCK 6 LOT 26, BLOCK 6 LOT 27, BLOCK 6 LOT 28, BLOCK 6 LOT 29, BLOCK 6 LOT 30, BLOCK 6 LOT 31, BLOCK 6 LOT 32,

BLOCK 7 LOT 1, BLOCK 7 LOT 2, BLOCK 7 LOT 3, BLOCK 7 LOT 4, BLOCK 7 LOT 5, BLOCK 7 LOT 6, BLOCK 7 LOT 7, BLOCK 7 LOT 8, BLOCK 7 LOT 9, BLOCK 7 LOT 10, BLOCK 7 LOT 11, BLOCK 7 LOT 12, BLOCK 7 LOT 13, BLOCK 7 LOT 14, BLOCK 7 LOT 15, BLOCK 7 LOT 16, BLOCK 7 LOT 17, BLOCK 7 LOT 18, BLOCK 7 LOT 19, BLOCK 7 LOT 20, BLOCK 7 LOT 21, BLOCK 7 LOT 22, BLOCK 7 LOT 23, BLOCK 7 LOT 24, BLOCK 7 LOT 25, BLOCK 7 LOT 26, BLOCK 7 LOT 27, BLOCK 7 LOT 28, BLOCK 7 LOT 42, BLOCK 7 LOT 43,

Book 16385   Page 1547   3pgs

EXHIBIT 3

BLOCK 7 LOT 44 , BLOCK 7 LOT 45 , BLOCK 7 LOT 46 , BLOCK 7 LOT 47 , BLOCK 7 LOT 48 , BLOCK 7 LOT 49 , BLOCK 7 LOT 50 , BLOCK 7 LOT 51 , BLOCK 7 LOT 52 , BLOCK 7 LOT 53 , BLOCK 7 LOT 54 , BLOCK 7 LOT 55 , BLOCK 7 LOT 56 , BLOCK 7 LOT 57 , BLOCK 7 LOT 58 , BLOCK 7 LOT 59 , BLOCK 7 LOT 60 , BLOCK 7 LOT 61 , BLOCK 7 LOT 62 , BLOCK 7 LOT 63 , BLOCK 7 LOT 64 , BLOCK 7 LOT 65 , BLOCK 7 LOT 66 , BLOCK 8 LOT 1 ,

BLOCK 8 LOT 2 , BLOCK 8 LOT 3 , BLOCK 8 LOT 4 , BLOCK 8 LOT 5 , BLOCK 8 LOT 6 , BLOCK 8 LOT 18 , BLOCK 8 LOT 19 , BLOCK 8 LOT 20 , BLOCK 8 LOT 21 , BLOCK 8 LOT 22 , BLOCK 8 LOT 23 , BLOCK 8 LOT 24 , BLOCK 8 LOT 25 , BLOCK 8 LOT 26 , BLOCK 8 LOT 27 , BLOCK 8 LOT 28 , BLOCK 8, LOT 29 , BLOCK 8, LOT 30 , BLOCK 8, LOT 31 , BLOCK 8, LOT 32 , BLOCK 8, LOT 33 , BLOCK 8, LOT 34 ,

BLOCK 9 LOT 1 , BLOCK 9 LOT 2 , BLOCK 9 LOT 3 , BLOCK 9 LOT 4 , BLOCK 9 LOT 5 , BLOCK 9 LOT 6 , BLOCK 9 LOT 7 , BLOCK 9 LOT 8, BLOCK 9 LOT 9 , BLOCK 9 LOT 10 , BLOCK 9 LOT 11 , BLOCK 9 LOT 12 , BLOCK 9 LOT 13 , BLOCK 9 LOT 14 , BLOCK 9 LOT 15 , BLOCK 9 LOT 16 , BLOCK 9 LOT 17 , BLOCK 9 LOT 18, , BLOCK 9 LOT 19 , BLOCK 9 LOT 20 , BLOCK 9 LOT 21 , BLOCK 9 LOT 22 , BLOCK 9 LOT 23 , BLOCK 9 LOT 24 , BLOCK 9 LOT 25 , BLOCK 9 LOT 26 , BLOCK 9 LOT 27 , BLOCK 9 LOT 28, BLOCK 9 LOT 29 , BLOCK 9 LOT 30 , BLOCK 9 LOT 31 , BLOCK 9 LOT 32 , BLOCK 9 LOT 33 , BLOCK 9 LOT 34 , KEY LARGO SUBDIVISION CB 05065 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not, all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the content requires, singular nouns and pronouns include the plural.

This correction Deed is filed to correct the acknowledgement of the original.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT

ACKNOWLEGEMENT

This instrument was acknowlege before meon October 11, 2013 by Burton Kahn President, Helvetia Asset Recovery,Inc.on behalf of that corporation

NOTARY PUBLIC, STATE OF TEXAS

HEATHER SILVA
Notary Public
State of Texas
My Comm. Exp. 03-20-2016

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

## OCT 11 2013



COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20130213342 Fees: $24.00
10/11/2013 11:31AM # Pages 3
Filed & Recorded in the Official
Public Records of BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

# EXHIBIT 10

## CAUSE NO. 1999-45534

| | | |
|---|---|---|
| COMMISSION FOR LAWYER DISCIPLINE | § | IN THE DISTRICT COURT OF |
| Petitioner, | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| HOWARD M. KAHN | § | |
| Respondent. | § | 80th JUDICIAL DISTRICT |

### AGREED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Petitioner, the **COMMISSION FOR LAWYER DISCIPLINE**, by and through its attorney

of record, Jennifer A. Hasley, Assistant Disciplinary Counsel, Office of the Chief Disciplinary

Counsel, STATE BAR OF TEXAS and Respondent, **HOWARD M. KAHN** (hereinafter referred to as

"Respondent"), by and through his attorney of record, Sam M. (Trey) Yates, III, agree to entry of the

following *Findings of Fact* and *Conclusions of Law* in support of an *Agreed Final Judgment of*

*Public Reprimand.*

### I. FINDINGS OF FACT

1.  **HOWARD M. KAHN** is an attorney licensed to practice law in the State of Texas and is a member of the STATE BAR OF TEXAS.

2.  Respondent's STATE BAR OF TEXAS Bar Card Number is 11072500.

3.  Respondent maintained his principal place of practice in Harris County, Texas, on the date this case was first filed.

4.  Sarah Keplinger, a licensed real estate agent, rented a house owned by her daughter and son-in-law, Sherry and Herbert Lancaster.

5.  Keplinger and the Lancasters executed a written instrument. The Lancasters thought the instrument reflected Keplinger's intent to purchase the property in the future, along with a





EXHIBIT

10

recitation of the amount of rent Keplinger was to pay each month to satisfy the purchase price of one hundred forty thousand and no/100 dollars ($140,000.00) and recited a down payment of eleven thousand and no/100 dollars ($11,000.00). Keplinger believed that the instrument was a deed of conveyance.

6.    Keplinger found a prospective buyer of the property, intended to sell the property, and planned on keeping the profits.

7.    Keplinger hired Respondent to represent her in the dispute with the Lancasters.

8.    Respondent drafted a Special Warranty Deed and Lis Pendens which indicated that the Lancasters were transferring title in the rental property to Keplinger. The Deed was signed by the grantee, Keplinger. The Deed had attached to it the written instrument between Keplinger and the Lancasters.

9.    Respondent filed the Special Warranty Deed and Lis Pendens with the County Clerk of Harris County, Texas, despite the fact that there was no litigation concerning the property pending at the time and Respondent contends none was required.

10.   Although Respondent knew no lawsuit was pending, relying on Keplinger's representations and the executed written instrument, he filed the Lis Pendens to slander the title and to prevent the Lancasters from selling the property.

11.   Respondent did not send the Lancasters a copy of the executed Special Warranty Deed and Lis Pendens.

## II. CONCLUSIONS OF LAW

The acts and/or omissions of Respondent described above constitute conduct in violation of

Rule 1.01(a) [for accepting or continuing employment in a legal matter which a lawyer knew or

should have known was beyond his/her competence] of the TEXAS DISCIPLINARY RULES OF

PROFESSIONAL CONDUCT.

**AGREED:**

Jennifer A. Hasley     6-24-00
Jennifer A. Hasley     Date
Assistant Disciplinary Counsel
State Bar No. 00792818

Office of the Chief Disciplinary Counsel
**STATE BAR OF TEXAS**
1111 Fannin, Suite 1370
Houston, Texas 77002
Phone:     (713) 759-6931
Fax:     (713) 752-2158

Attorney for Petitioner,
**The Commission for Lawyer Discipline**

Sam M. (Trey) Yates, III     6-24-00
Sam M. (Trey) Yates, III     Date
State Bar No. 22142450

Law Office of Sam M. (Trey) Yates, III
952 Echo Lane, Suite 465
Houston, Texas 77024

Phone:     (713) 932-7177
Fax:     (713) 932-7277

Attorney for Respondent,
**Howard M. Kahn**

# EXHIBIT 3

PAID

| UNITED STATES BANKRUPTCY COURT Western District of Texas | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle): CROFT, BRADLEY, L. | Name of Joint Debtor (Spouse) (Last, First, Middle): N/A |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): NONE | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): N/A |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): 3202 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): N/A |
| Street Address of Debtor (No. and Street, City, and State): 17914 BUTTE HILL SAN ANTONIO, TX 78238   ZIP CODE 78238 | Street Address of Joint Debtor (No. and Street, City, and State): N/A   ZIP CODE |
| County of Residence or of the Principal Place of Business: BEXAR | County of Residence or of the Principal Place of Business: N/A |
| Mailing Address of Debtor (if different from street address): 14439 NW MILITARY HWY, SUITE 108-105 SAN ANTONIO, TX 78231   ZIP CODE 78231 | Mailing Address of Joint Debtor (if different from street address): N/A   ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above): SAME   ZIP CODE | |

11-52905 C

### Type of Debtor
(Form of Organization)
(Check one box.)

- ☑ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

### Nature of Business
(Check one box.)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☐ Other

**Tax-Exempt Entity**
(Check box, if applicable.)

- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

### Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.)

- ☑ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

### Nature of Debts
(Check one box.)

- ☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☐ Debts are primarily business debts.

### Filing Fee (Check one box.)

- ☑ Full Filing Fee attached.
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

### Chapter 11 Debtors
**Check one box:**
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

**Check if:**
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*

**Check all applicable boxes:**
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

### Statistical/Administrative Information

- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

**Estimated Number of Creditors**

| ☑ 1-49 | ☐ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☐ Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

**Estimated Assets**

| ☑ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

**Estimated Liabilities**

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☑ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | Name of Debtor(s): CROFT, BRADLEY, L. |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location Where Filed: N/A | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: Western District of Texas | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | X _____ Signature of Attorney for Debtor(s) (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☑ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form) 1 (4/10)

Page 3

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>CROFT, BRADLEY, L. |
|---|---|

| Signatures | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Debtor<br><br>X N/A<br>Signature of Joint Debtor<br>210-884-2293<br>Telephone Number (if not represented by attorney)<br>08/23/2011<br>Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X N/A<br>(Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative)<br><br>_____<br>Date |

| **Signature of Attorney*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X _____<br>Signature of Attorney for Debtor(s)<br>PRO SE DEBTOR<br>Printed Name of Attorney for Debtor(s)<br><br>Firm Name<br><br>Address<br><br>Telephone Number<br><br>Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Authorized Individual<br>BRADLEY L. CROFT, PRO SE<br>Printed Name of Authorized Individual<br><br>Title of Authorized Individual<br><br>Date | _____<br>Address<br><br>X _____<br><br>Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT

In re CROFT, BRADLEY, L.                              Case No. _____
             Debtor                                              (if known)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☑ 1. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

☐ **Incapacity.** (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

☐ **Disability.** (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

☐ **Active military duty in a military combat zone.**

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _____

Date: 08/23/2011

B 6D (Official Form 6D) (12/07)

In re __CROFT, BRADLEY, L.__       Case No. _____
              Debtor                                 (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 9509<br>CHASE BANK<br>P.O. BOX 94014<br>PALANTINE, IL 60094 | | H | JANUARY 2001 LIFE ESTATE OR HOMESTEAD<br>VALUE $ 375,000.0 | X | | | 405,000.00 | 25,000.00 |
| ACCOUNT NO.<br>SECURITY SERVICE FCU<br>16211 LA CANTERA PKY<br>SAN ANTONIO, TX 78256 | | H | OCTOBER 2010 2007 ACURA MDX<br>VALUE $ 19,000.00 | X | | | 19,000.00 | -0- |
| ACCOUNT NO.<br>FIRSTMARK<br>P.O. BOX 701650<br>SAN ANTONIO, TX 78270 | | H | HONDA ODESSY<br>VALUE $ 10,000.00 | X | | | 6,800.00 | -0- |

____ continuation sheets attached

Subtotal ► (Total of this page)   $      $

Total ► (Use only on last page)   $ 412,000.00   $ 25,000.00

(Report also on Summary of Schedules.)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B 6E (Official Form 6E) (04/10)

In re CROFT, BRADLEY, L. _____,    Case No._____
                 Debtor                                              (if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts _not_ entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☑ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

TYPES OF PRIORITY CLAIMS (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic Support Obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

_* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment._

B 6E (Official Form 6E) (04/10) – Cont.

In re  CROFT, BRADLEY, L. _____ ,      Case No._____
                        Debtor                                                              (if known)

☐ **Certain farmers and fishermen**

   Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

   Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**

   Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

   Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**

   Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____ continuation sheets attached

in re: CROFT, BRADLEY L.                                    Case No. _____
_____
            Debtor                                              (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data..

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 4006 <br><br> AMERICAN EXPRESS P.O. BOX 650448 DALLAS, TX | | H | CREDIT CARD DEBT | X | | | 50,000.00 |
| ACCOUNT NO. 5419 <br><br> CHASE BANK P.O. BOX 94014 PALANTINE, IL 60094 | | H | CREDIT CARD DEBT | X | | | 40,000.00 |
| ACCOUNT NO. 6402 <br><br> BANK OF AMERICA P.O. BOX 851001 DALLAS, TX 75285 | | H | CREDIT CARD DEBT | X | | | 25,000.00 |
| ACCOUNT NO. 5086 <br><br> FIA CARD SERVICES P.O. BOX 78222 SAN ANTONIO, TX 78247 | | H | CREDIT CARD DEBT | X | | | 25,000.00 |

_____ continuation sheets attached

Subtotal ➤  $ 140,000.00

Total ➤  $

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

In re __CROFT, BRADLEY, L._____,   Case No. _____
                    **Debtor**                                          (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br><br> MYSTI MURPHY <br> 5625 BROADWAY, #2 <br> SAN ANTONIO, TX | | H | LEGAL FEES | | | X | 10,000.00 |
| ACCOUNT NO. <br><br> BARBARA LOWRY <br> 1600 NE LOOP 410, #202 <br> SAN ANTONIO, TX 78209 | | H | CLAIMS | | | X | 100,000.00 |
| ACCOUNT NO. <br><br> CHARLES GORHAM <br> 1250 NE LOOP 410, #830 <br> SAN ANTONIO, TX 78209 | | H | LEGAL FEES | | | X | 10,000.00 |
| ACCOUNT NO. <br><br> JONATHAN YEDOR <br> 100 NE LOOP 410, #1075 <br> SAN ANTONIO, TX 78209 | | H | LEGAL FEES | | | X | 5,000.00 |
| ACCOUNT NO. <br><br> CHARLES RILEY <br> 320 LEXINGTON AVE. <br> SAN ANTONIO, TX 78215 | | | LEGAL FEES | X | | | 15,000.00 |

Sheet no._____ of_____ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal➤ $ 140,000.00

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

B 6F (Official Form 6F) (12/07) - Cont.

In re __CROFT, BRADLEY, L._____,     Case No. _____
                    **Debtor**                                              (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 0301 | | | CREDIT CARD DEBT | | | | |
| CITIBANK P.O. BOX 182564 COLOMBUS, OH 43218 | | C | | X | | | 20,000.00 |
| ACCOUNT NO. 7218 | | | CREDIT CARD DEBT | | | | |
| HSA BANK 605 N. 8TH ST., SUITE 320 SHEBOYGAN, WI 53081 | | C | | X | | | 25,000.00 |
| ACCOUNT NO. 0893 | | | REVOLVING | | | | |
| SEARS P.O. BOX 183081 COLOMBUS, OH 43218 | | C | | X | | | 3,000.00 |
| ACCOUNT NO. | | | LEGAL FEES | | | | |
| DAVID MCLANE 1924 N. MAIN ST. SAN ANTONIO, TX 78212 | | H | | X | | | 8,000.00 |
| ACCOUNT NO. | | | SPOUSAL SUPPORT | | | | |
| CHERIE JEFFCOAT 5625 BROADWAY, #2 SAN ANTONIO, TX 78209 | | H | | | | X | 6,000.00 |

Sheet no._____ of _____ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal► $ 62,000.00

Total► $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

In re _____ ,          Case No. _____
                     Debtor                                                    (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br><br> JOHN CAVE <br> 300 CONVENT, #1080 <br> SAN ANTONIO, TX 78205 | | H | LEGAL FEES | | | X | 20,000.00 |
| ACCOUNT NO. <br><br> WebBank <br> 111 SUTTERS, 22 FLOOR <br> SAN FRANSICO, CA 94104 | | H | PROMISSORY NOTE | | | X | 15,000.00 |
| ACCOUNT NO. <br><br> US BANK <br> P.O. BOX 790179 <br> ST. LOUIS, MO 63179 | | H | LOAN | | X | | 210,000.00 |
| ACCOUNT NO. <br><br> | | | | | | | |
| ACCOUNT NO. <br><br> | | | | | | | |

Sheet no. _____ of _____ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal▶    $ 245,000.00

Total▶    $ 587,000.00
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


IN RE: CROFT, BRADLEY L

                                           CASE NO.

     Debtor


## VERIFICATION OF CREDITOR MATRIX


     The above named Debtor hereby verify that the attached list of creditors is true and correct to the best of his knowledge and that it cooresponds to the creditors listed in my schedules.


Dated: August 23, 2011



_____
     DEBTOR

Chase Bank
P.O. Box 04014
Palantine, IL 60094

Security Service FCU
16211 La Cantera Pky
San Antonio, TX 78256

First Mark
P.O. Box 701650
San Antonio, TX 78270

Mysti Murphy
5625 Broadway #2
San Antonio, TX 78209

Barbara Lowry
1600 NE Loop 410
San Antonio, TX 78209

CitiBank
P.O. Box 182564
Colombus, OH 43218

Sears
P.O. Box 183081
Colombus, OH 43218

Cherie Jeffcoat
c/o Mysti Murphy
5625 Broadway, #2
San Antonio, TX 78209

American Express
P.O. Box 650448
Dallas, TX 75285

Chase Bank
P.O. Box 94014
Palantine, IL 60094

Bank of America
P.O. Box 851001
Dallas, TX 75285

US Bank
P.O. Box 790179
St. Louis, MO 63179

Charles B. Gorham
1250 NE Loop 410, Suite 830
San Antonio, TX 78209

Jonathan Yedor
100 N.E. Loop 410, Suite 1075
San Antonio, TX 78216

John Cave
300 Convent #1080
San Antonio, TX 78205

# EXHIBIT 4

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION


IN RE:                              * Case No. 14-50980-cag
                                    *
BURTON M. KAHN,                     *
                                    *
        Debtor.                     * October 15, 2014


------------------------------------------------------------

BEFORE THE HONORABLE CRAIG A. GARGOTTA

BANKRUPTCY JUDGE

------------------------------------------------------------


**#59** - Trustee's Motion to Sell All Non-Exempt Assets, Claims and Causes of Action.

\* \* \* \* \* \* \* \* \* \*

ORIGINAL

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

A P P E A R A N C E S


HAYNES and BOONE, LLP
By:  Ms. Lisa S. Barkley
112 East Pecan Street, Suite 1200
San Antonio, Texas   78205
Appearing for Helvetia Asset Recovery, Inc.;


PRO SE DEBTOR
By:  Mr. Burton Kahn
1706 Alpine Circle
San Antonio, Texas   78248
Appearing pro se as the Debtor;


HAYNES and BOONE
By:  Mr. Werner A. Powers
2323 Victory Avenue, Suite 700
Dallas, Texas   75219
Appearing for Helvetia Asset Recovery, Inc.;


CHAPTER 7 TRUSTEE
By:  Mr. Johnny Thomas
St. Paul Square
1153 E. Commerce
San Antonio, Texas   78205
Appearing as the Chapter 7 Trustee.

INDEX

| WITNESSES | Direct | Cross | Redirect | Recross |
|-----------|--------|-------|----------|---------|
| Gary Mowrey | 83 | -- | -- | -- |

| EXHIBITS: | Offered | Received |
|-----------|---------|----------|

(No exhibits offered in this hearing.)

| RULING OF THE COURT: | 91 |
|----------------------|----|

* * * * * * * * * * * *

THE COURT: We have one 9:00 o'clock matter on our docket this morning. This is on Page 1. Case Number 14-50980, Burton M. Kahn. This is on ECF Number 59, the Trustee's Motion to Sell All Nonexempt Assets, Claims and Causes of Action.

May I please have announcements.

MR. POWERS: Your Honor, Werner Powers and Ms. Lisa Barkley for Helvetia, which is -- who is the purchaser.

MR. KAHN: Burton Kahn, who's the Debtor, your Honor.

THE COURT: Thank you.

We are missing the Trustee.

Did you see Mr. Thomas this morning?

MR. POWERS: We did not, your Honor.

THE COURT: All right. We obviously can't proceed on this without the Trustee being here, so...

MR. POWERS: Should we go call him real quickly, your Honor?

THE COURT: We'll take care of that. We'll find out. And I'll ask my law clerk in --

(Sotto voce exchange.)

THE COURT: I'm sorry for the delay, but we have to have him here.

I assume -- I've read the moving papers. You

contest the motion to sell; is that correct, Mr. Kahn?

MR. KAHN: Correct, your Honor.

THE COURT: All right. And I certainly want to hear --

And you all support the motion to sell.

So, very good. I do have a 9:30 matter. Once we get Mr. Thomas here, we'll proceed, ladies and gentlemen. But, obviously, I can't go forward until Mr. Thomas gets here. So, we'll find out where he is.

Are there any witnesses, or anything like that, or is it just argument?

MR. KAHN: Yes, Your Honor, there's one witness.

THE COURT: Who would that be, Mr. Kahn?

MR. KAHN: That would be Mr. Mowrey. He's an appraiser, and he made the -- the appraisal of the Joabert property.

THE COURT: Okay. Were you all aware that Mr. Mowrey was going to be called as a witness?

MR. POWERS: We -- We sort of suspected he might, your Honor, but we don't think that he has test- --

MR. KAHN: Your Honor, I sent them a copy of the -- the subpoena that I served Mr. Mowrey.

THE COURT: Okay. We'll take that up.

Because I need to have Mr. Thomas here. He needs to be a participant in this discussion. So, we're going to -- I apologize, but we -- we've got to have him here, so... Maybe he was delayed in traffic, maybe he got his times... But he's very punctual. This is highly unusual for him.

So, if you don't mind, please, what I'm going to do is step away, and then we'll start as soon as he gets here. All right?

MR. POWERS: Very good, Judge.

THE COURT: So, if you'll -- you'll just stand down for a minute.

Do you have exhibits to present?

MR. KAHN: Yes, your Honor.

THE COURT: Okay. And do you have exhibits to present?

MR. POWERS: We have impeachment exhibits, your Honor.

THE COURT: All right.

MR. POWERS: And if he -- And if he's allowed to put this witness on, I'm sure we will call, as an adverse witness, the Debtor.

THE COURT: All right. Well, we'll deal with that when Mr. Thomas gets here.

Mr. Kahn, do you have the -- do you have copies

of your exhibits for the Court and also for opposing counsel?

MR. KAHN: Yes.

THE COURT: All right. Very --

Ah. There's Mr. Thomas.

MR. THOMAS: I'm sorry, Judge. It was a bad morning.

THE COURT: Mr. Thomas, do you need just a minute, and then we can start? Would that help you?

MR. THOMAS: That'll be fine, Judge.

THE COURT: All right. So I'll --
Mr. Thomas is here. And I'll -- I'll come out in, like, five minutes. I do have a 9:30 matter. I'll probably ask the parties how long that's going to take, because this, I think, is going to take longer, if I'm just going to make an educated guess.

Mr. Ayers, good morning.

MR. AYERS: Your Honor, we think about 20 minutes. I mean, it's very straightforward.

(Another matter taken up briefly.)

THE COURT: So, you think about 20 minutes. I assume that your matter may take a little bit longer; is that correct, Mr. Thomas?

MR. THOMAS: I think so, Judge.

THE COURT: All right. Let me step away.

If you all want to talk for a minute, get situated, and then we'll start the matter. I might -- To be fair to you all -- or, I'm sorry, I might break to take up the other matter. All right?

MR. POWERS: Yes, sir.

THE COURT: So, just to let you know.

All right, ladies and gentlemen. We'll take a five-minute recess. Okay? Thank you.

COURTROOM DEPUTY: All rise.

(Recess.)

THE COURT: Mr. Thomas, could you -- could you come to the podium, please?

MR. THOMAS: Good morning, Judge.

THE COURT: Good morning. This is on your motion to sell. We have two interested parties. We have the Debtor, Mr. Kahn, and also we have -- Is it Helvetia, is how you pronounce it?

MR. THOMAS: Yes, your Honor.

THE COURT: And they're the purchaser of the -- of the cause of action, and, I'll just say, generically, the nonexempt assets, claims --

MR. THOMAS: That's correct, Judge.

THE COURT: -- and causes of action.

I think this is going to take a little bit of time. Were you aware of that?

MR. THOMAS: Yes, sir. I had seen the exhibits, and the objections, of course.

THE COURT: I would -- We could go for about two minutes, then I'd have -- I'd call the 9:30 matter. I don't think the 9:30 matter, as Mr. Ayers has described on the record, is going to take more than 20 minutes. So, what I'd like to do -- Do you have --

Does anyone have other engagements later on this morning? Because I would take you all next.

MR. POWERS: No, your Honor.

THE COURT: Mr. --

MR. KAHN: Your Honor, I do have a witness that is an expert witness, and -- and I have to pay him, you know, his fee, which is kind of blood money at this particular time, so... And this delay is costing me money.

THE COURT: I understand that, sir.

MR. KAHN: If I -- If -- If -- If I could, in our few minutes, just put him on. The only thing he's going to do is submit this -- this appraisal, and that he made the appraisal, and just a question, "Did you make it," et cetera, and that's it.

THE COURT: I -- Mr. Kahn, I certainly appreciate, from your perspective, it may take a

couple of minutes, but based upon my years of both being a lawyer and a judge, I suspect it will take longer. So, while I am sympathetic to the cost involved, the fact we're in court, there's an inherent cost to it. I'm going to ask -- ask you to stand down.

Mr. Thomas, I'll come back to your matter in just a minute. I'm going to deal with the Valence --

MR. THOMAS: That would be fine.

THE COURT: -- matter.

So, if you all want to step out for a minute, you may do so. You can leave your stuff here.

But, Mr. Kahn, you're just going to have to wait, so -- Certainly, I am sensitive to that, but I don't think this matter is going to take, necessarily, all that long.

MR. POWERS: Thank you, your Honor. We'll be outside.

MR. KAHN: (Inaudible; too far from microphone.)

THE COURT: Well, I've excused the -- Go to the podium, please. What's your question, Mr. Kahn?

MR. KAHN: I did not submit -- bring with me five copies of the appraisal, I had three, so that I'm going to -- in this time period I'm going to run over

to the Clerk's office and get a couple of -- of exhibits that I want to put in, then I will have five.

But the appraisal is -- was -- was submitted in the -- in the filing of my motion -- my objection.

Also, I have a chart that was also filed in the objection, and which I have a large scale of it, so that you could easily see it. And I don't have five copies of that.

THE COURT: I'll take that up when we come back. The local rules are pretty clear on the requirements in terms of number of exhibits, why we need the number of exhibits for purposes of conducting the hearing. While I'm sympathetic to your situation, as a pro se debtor, you're not excused in those requirements.

MR. KAHN: I'm not asking -- It -- The one thing that I'm going to do, if I ever get this -- this -- this whole situation squared away, is I am going to go to law school, and not be a -- and -- and not go to -- I should have gone to law school, instead of engineering school. But, anyway, I will do that when I -- when this is over.

Thank you, your Honor.

THE COURT: All right. So, I'll come back to the matter, and we'll -- we'll deal with all of

that.

(Sotto voce exchange.)

(Other matter taken up.)

THE COURT: I'm going to take, like, a three-minute recess, and then we're going to start, Mr. Kahn.

MR. KAHN: Thank you, your Honor.

THE COURT: Thank you, sir.

All right. So, just a very short recess, and then we'll begin with the Kahn matter.

COURTROOM DEPUTY: All rise.

(Recess.)

THE COURT: All right, Mr. Thomas. This is your motion. We're going to start with you first, then I'll hear from the other interested parties.

MR. THOMAS: Mr. Johnny Thomas, Trustee and Movant.

This is an application to sell the nonexempt property of the estate. It mainly involves some shares in Helvetia, a thousand shares; a hundred shares in another corporation called Joabert; and, then, numerous lawsuits that he -- that Mr. Kahn, the Debtor, claims are valued at $1,470,940.

THE COURT: A million or a hundred million?

MR. THOMAS: One million.

THE COURT: Okay.

MR. THOMAS: And the -- the shares, he's valued at 3,734,309.

THE COURT: So, may we break it down, just -- I know I asked you to go through a recitation, but help me out. So, we -- You want to sell a hundred shares of stock in Helvetia?

MR. THOMAS: Yes -- Oh, Helvetia, 1,000 shares.

THE COURT: One thousand. Then a hundred shares in what?

MR. THOMAS: Joabert, J-O-A-B-E-R-T.

THE COURT: Do you know what Joabert is?

MR. THOMAS: Where it is?

THE COURT: No, what it is, what kind of entity it is.

MR. THOMAS: Oh, these are development companies. They --

THE COURT: Development companies?

MR. THOMAS: Yes, sir.

THE COURT: All right. Then you said some causes of action, the rest are causes of action?

MR. THOMAS: Yes, sir. Item 21 on Schedule B outlines those lawsuits involving --

THE COURT: How many are there, please?

MR. THOMAS: Seven.

THE COURT: All right. Can we -- Just for purposes of the record, and I appreciate you -- you trying to get to the point, but let's break these down. Go -- Go through them one-by-one so I have a record of what -- what these causes of action are.

MR. THOMAS: Yes, sir. There's one lawsuit against Haynes and Boone, --

THE COURT: Okay.

MR. THOMAS: -- 1,400,000.

There's a lawsuit against the City of San Antonio for 70,000.

There's a lawsuit against -- Burton Kahn versus Helvetia. He doesn't value that lawsuit.

THE COURT: Okay.

MR. THOMAS: There's another lawsuit. If I can give you the case number, Judge: The last four digits 0014, Burton Kahn versus Helvetia; the last four 0258, Burton Kahn versus Helvetia; 0319, Burton Kahn versus Helvetia; --

These are all state court cases. I'm sorry. These are all, yeah, state court cases that are now on appeal.

-- 0357, Burton Kahn versus Helvetia.

The cases now still in district court, 2013

cases: Last four 8355, Helvetia Recovery versus Kahn; and then, 2013, 8394, Helvetia Recovery.

Those are the lawsuits, as I understand them, Judge.

THE COURT: Very -- If I may interrupt you again, because I'm trying to get some context.

Have -- You mentioned appeals. Have there been a number of determinations on these causes of action?

MR. THOMAS: Yes, Judge. I believe they were all against Mr. Kahn, but he appealed them.

THE COURT: Okay. So, we -- For purposes of the record, on the causes of action, even though it appears that Mr. Kahn was the plaintiff in all of these, there was a determination at the trial level in favor of the -- collectively, of the defendants, --

You'll get your turn, Mr. Kahn.

-- and those matters are up on appeal; is that correct?

MR. THOMAS: That's my -- According to his schedules.

THE COURT: All right.

MR. THOMAS: That's what he's indicated.

THE COURT: Okay. So, what other assets are you trying to sell?

MR. THOMAS: Then there were some other

small businesses that -- Some are operating and some are not. In addition to Joabert and Helvetia, there was something called Trail Construction Company; Puerto Verde, Ltd.; Key Largo Homeowners Association; Royal Crest Homeowners Association; Contour Construction; Ideal Travel Company; Paradiv, P-A-R-A-D-I-V, Corporation; and Terob, T-E-R-O-B, Corporation.

And some of these, he says they're presently operating, some he says are not operating. We're not clear on all of them. But we want to --

THE COURT: Does he ascribe a value to them?

MR. THOMAS: He did not, to these corporations, Judge.

THE COURT: Is there -- Is it listed as unknown, or just no value listed?

MR. THOMAS: No bank account, unknown. Some are unknown and some say no bank account.

THE COURT: All right. Please continue. Is there -- Are there any other assets?

MR. THOMAS: These are the assets, as I understand them, Judge. And I think these are the assets that the buyer was mainly interested in recovering, your Honor.

THE COURT: All right. So, let me -- let me

just stop you right there. And there's a reason why I'm going through this.

So, we have shares of stock in two entities. We have, I believe you indicated, seven causes of action. Then we have these businesses that may or may not be operating.

You've conducted -- Have you concluded the 341 meeting?

MR. THOMAS: Yes, Judge. We -- I think there were at least four resets. The last one was completed in July.

I did have an attorney assist me at the beginning. We made a determination that it'd be hard to litigate all these lawsuits. And we just -- I just didn't feel -- or the attorney didn't feel it was marketable. It would take several thousands of dollars to litigate the claims, and so forth. And even the ownership interest, it would take some -- some litigation to resolve the actual -- whether or not he owns that interest.

The clearest might be that he owns one/third of Joabert, but then it doesn't appear that Joabert has any equity.

THE COURT: Okay.

MR. THOMAS: And so, with that, I --

toward -- I guess in August, after we concluded the 341 meetings, the -- Helvetia offered $10,000 to buy all of these properties, --

THE COURT: When you say "properties," --

MR. THOMAS: -- which would amount --

THE COURT: May I -- May I interrupt you again? Everything?

MR. THOMAS: Everything. Yes, sir.

THE COURT: Stock, causes of action, interest in whatever these -- these entities are. Is that correct?

MR. THOMAS: Yes, sir. That's correct.

THE COURT: All right.

MR. THOMAS: And for about $10,000, I think we would get somewhere between two and three percent interest for the unsecured.

THE COURT: Okay.

MR. THOMAS: And, so, it's above one percent. If it's above one percent and -- I've always considered that incon- -- more than inconsequential. So, I think there's some value, and something for creditors, as opposed to nothing.

THE COURT: In your capacity as the Trustee -- And how long have you been a Panel Trustee?

MR. THOMAS: Since '96. 1996.

FEDERAL COURT REPORTERS OF SAN ANTONIO (210) 340-6464

THE COURT: So, you have -- And I genuinely mean this. You have considerable experience in this regard.

MR. THOMAS: Yes, sir.

THE COURT: Obviously, you conducted the 341 meeting. Did you -- Based upon -- As you understand the facts of this case, and you've analyzed this case both for its own facts and based upon your experience as a trustee, do you think -- I mean, did you think it was appropriate to market these assets, or simply seek -- I mean, how did you go about the $10,000 number with Helvetia?

MR. THOMAS: Judge, I was in the process of probably no-asseting the case, or at least holding on to see what would happen to the litigation as it was proceeding. And, in the middle of that, I was offered the $10,000. It was initially five, but at least ten -- five would have -- $5,000 would have been less than one percent, which I didn't think would have -- have much value to the estate. Ten thousand would get at least -- get me to at least two or three thousand, and that was the offer on the table.

And part of my concern was that something like this sometimes needs to be brought to the attention of the Court, and that's what I wanted to do, also.

THE COURT: No, you did exactly right, because essentially--I mean, let's be honest, we're all adults here--they're buying peace.

MR. THOMAS: That's correct.

THE COURT: If I -- If I approve the sale to them, it cuts off Mr. Kahn's ability to pursue these cases as the Debtor.

MR. THOMAS: That's correct.

THE COURT: I think you would agree with this statement. First of all, these are all prepetition causes of action, so they enure to the Chapter 7 estate, of which you're the Panel Trustee. Would you agree with that statement?

MR. THOMAS: I agree. And that's -- I think Mr. Kahn agrees with that, also.

THE COURT: All right. From the perspective, if you have a position, does Mr. Kahn, as the Debtor, have any standing to object to this based upon the fact that they're -- You know, a lot of times when we look at objections to claim, the analogy where I'm going is, is if a debtor wants to intervene in a trustee's claims objection, one of the things I have to evaluate is whether or not there's any -- there's going to be any return to the debtor. If there isn't, the debtor doesn't have standing to object to the

claim.

Does Mr. Kahn have any standing to object to the sale, given that there's only going to be a, we'll say, three percent distribution to unsecureds?

MR. THOMAS: Judge, if everything went right, I don't think there'd be money back to Mr. Kahn. If most of -- You know, if -- if even fifty percent, ten percent of the values come out right, I don't see any money going back to Mr. Kahn.

THE COURT: All right.

MR. THOMAS: And, so, I certainly don't see $10,000 giving any benefit to Mr. Kahn.

THE COURT: So, let's --

MR. THOMAS: And, so, I do question it.

THE COURT: So, you agree with me that there may -- Is there or is there not a standing issue?

MR. THOMAS: I think there's a standing issue, Judge. If you look at his value, he thinks that these have some equity down the road. I just think it's totally unreasonable.

THE COURT: All right. So, let's -- let's focus back on one other thing for a minute, and then I'll hear anything else you have to say, is, let's assume that you got no tender from Helvetia of any monies, you know, the case proceeded along. How long

would you keep this case open, given the administrative costs versus what might happen with regard to the lawsuits, and the value of the business entities, and the value of the shares? What would you do? Would you -- Would you file a no-asset report?

MR. THOMAS: Yes, sir. A lot of times, when a lot of litigation is going on like this, I would hold off on the no-asset report and at least let some of the cases resolve. So, hopefully, within a year I'd be able to let it -- go ahead and file the no-asset case, and the creditors would get nothing.

THE COURT: All right. So, you would delay closing the case to see what would unfold with regard to these causes of action?

MR. THOMAS: That's correct, Judge.

THE COURT: All right. What else do you wish to tell me?

MR. THOMAS: Judge, that was the -- those were all the issues I had in mind. And, also, I would add that the estate has no money to pursue a lot of the litigation.

THE COURT: Thank you. That was the last point. Let's talk briefly about that.

Now, what's your commission on a case like this?

MR. THOMAS: Twenty-five the first 5,000.

It's the standard statutory. Twenty-five percent the first 5,000, ten percent up to 45,000, and three percent up to 100,000, something like that.

THE COURT: So, let's assume you didn't have an offer on the table for the $10,000--I'll come back to that--what would be your fee in this case?

MR. THOMAS: Probably about 3,000.

THE COURT: $3,000 is all you get. And there's no money on hand; correct?

MR. THOMAS: There's no money on hand. This would be the -- Well, but they did prepay the $10,000. I did ask for them to do that.

THE COURT: All right. So, you'll get -- you'll get a component of -- a portion of that, and then the rest, the balance of the proceeds will be remitted to the benefit of the creditors; correct?

MR. THOMAS: That's correct. That's correct, Judge.

THE COURT: All right. Do you -- Is there anything else you wish to tell me?

MR. THOMAS: I think that would be all I'd have right now, Judge.

THE COURT: All right. Mr. Kahn, I'm going to hear from you last. I want to hear from Helvetia, because I think you're going to take the longest.

All right.  Sir, if you'll come to the podium. And, again, state your name for the record.

MR. POWERS:  Your Honor, Werner Powers, and Ms. Barkely, Haynes and Boone, for Helvetia Asset Recovery, Inc.

By way of explanation of who we represent --

THE COURT:  Yes, please.

MR. POWERS:  Helvetia Asset Recovery, Inc., is by far and away the largest creditor of the estate. Helvetia has two judgments against Mr. Kahn, both final, one judgment by --

Let me get my notes here.

THE COURT:  Yeah.  Let's be -- Let's have an accurate record, because this will inform my ruling.

MR. POWERS:  Judge, one finding by -- a judgment for sanctions by Judge Tanner, a state court judgment, for approximately $253,000, where the court found that Mr. Kahn committed a fraud on the court, and made false filings, and claimed to be an owner of Helvetia Asset Recovery, Inc., when he was not, in order to cloud title to real estate that Helvetia Asset Recovery, Inc., owned here in Bexar County.

THE COURT:  Is that order final?

MR. POWERS:  It is a final judgment, your Honor.  I -- I -- He has prosecuted an appeal

from it, so that appeal, I think, is pending.

THE COURT: Okay.

MR. POWERS: There's a question as to whether it will -- well, as to whether he can appeal, given some orders of the appellate court, which I'll talk about in a minute.

In addition to that, there is a judgment for over $2 million, a unanimous verdict returned against Mr. Kahn in Judge Bery's (sic) court, for breach of fiduciary duty --

THE COURT: Which Judge Biery --

MR. POWERS: B-E-R- --

MS. BARKLEY: Michael Mery.

MR. POWERS: Michael Bery (sic). Okay.

THE COURT: Okay. I thought you said Biery. That's why I asked.

MR. POWERS: Oh, no. The state --

THE COURT: I'm thinking of -- So, state court?

MR. POWERS: Yes.

THE COURT: Michael Bery (sic). Go ahead, sir.

MR. POWERS: Yeah, Bery (sic). Michael --

MS. BARKLEY: Mery, M-E- --

MR. POWERS: B-E-R- --

MS. BARKLEY: M-E-R-Y.

MR. POWERS: Oh, Mery. I said Bery. Excuse me. Mery. And --

THE COURT: Thank you.

MR. POWERS: Thank you. And -- I tried the case for two weeks. I should know that. But, anyway. So, it's about -- approximately $2 million, findings of breach of fiduciary duty, embezzlement of funds belonging to Helvetia, punitive damages of about a million dollars, as I recall. I think that judgment is, in all things, final. Mr. --

THE COURT: No further appeals?

MR. POWERS: Well, let me explain my position. Mr. -- Mr. Kahn filed a notice of appeal. He then dismissed his appeal. Okay? He now has filed a second appeal of that judgment -- not of the judgment, but of an order that refused to grant him a new trial.

THE COURT: Okay.

MR. POWERS: The appellate court recently issued an order, I think last week, saying -- explaining why we should not dismiss this because you can't appeal that type of an order. The time to appeal the final judgment's over. You only get one appeal. He dismissed his appeal. I think it's final.

But he -- he would probably disagree with me on that. But that's what the status is. And I think the court of appeals now has clearly indicated that it's having a hard time seeing why it has any jurisdiction over this.

There -- I want to -- When the assets were being listed off, just to be clear, Mr. Kahn put -- There's -- There's two companies, two corporations that own real estate here in Bexar County. One is Helvetia, and they own a subdivision called Key Largo. The -- The other is Joabert, which owns the Royal Crest Subdivision.

THE COURT: Royal Crest?

MR. POWERS: Royal Crest Subdivision.

THE COURT: Go ahead.

MR. POWERS: As to Key Largo and -- and -- and Helvetia, Mr. Kahn was fired as an officer, and that was the subject of the judgment in Judge Mery's court. And -- And what he did is, he issued himself stock after he was fired. He claims that he owned the company. And then -- And that was the subject of the sanction order that was entered against him.

So, he -- he doesn't own any stock in Helvetia. That's not one of his assets. The court's adjudicated that and that's over.

As to the Joabert and the Royal Crest Subdivision, Mr. Kahn claims to own a minority one/third interest in the stock of that company. And that's going to be important in a moment because the appraisal that we're going to be -- if you want to call it an appraisal, doesn't even attempt to appraise his minority interest in -- in Joabert.

THE COURT: And Joabert is a development company that owns raw land that they're going to develop for residential?

MR. POWERS: Exactly.

THE COURT: All right.

MR. POWERS: And -- And while your Honor touched that point, the -- the appraisal that is done is rather unusual. It purports to be an appraisal that speaks to the future, and it's -- it has a future date. And it assumes that, somehow, this land is all finished-out and ready for sale and fully developed. And it doesn't even purport to opine as to how much it would cost to do that.

THE COURT: You'll get your shot, Mr. Kahn. Just be patient.

MR. KAHN: I can't object while he's saying something?

THE COURT: I'm -- This is only just

argument. So, you -- I'll -- I'll hear what you have to say in just a minute. This is not evidence at this point. You're just telling me what your position is.

MR. POWERS: Our position --

THE COURT: And I understand you disagree with it. Believe me, I recognize that.

Go ahead, sir.

MR. POWERS: Anyway, your Honor, I don't think it's -- I don't even think it sustains a Daubert challenge, would -- would withstand a Daubert challenge, because it's so speculative.

But it's also irrelevant, because he doesn't own any of the real estate. He owns, or purports to own, a minority interest in -- in stock in the -- in the company. He has no rights to put the stock. He has no rights to, you know, require it be purchased. It's just...

And -- And his ownership of that stock is in real doubt. He -- He was supposed to -- He -- He was supposed to earn that stock through sweat equity in doing engineering work on the project. He was fired because he was not -- allegedly incompetent. And, so, there's real questions as to whether he ever performed the services to get that one/third minority interest.

In addition to that -- And the appraisal -- or

another reason the appraisal is just totally irrelevant, there's approximately four -- four-and-a-half million dollars of debt on the property. The appraisal didn't even take into account the debt on the property. And Mr. -- As Mr. Kahn knows, his arrangement was never that he would get paid before the debt, you know, if that company were liquidated. So, that's our position on that.

The lawsuits -- Your Honor is right. Part of this is to buy peace. I mean, we --

THE COURT: I mean, let's be candid.

MR. POWERS: We'll be candid. That's what it is. I mean, we -- Every time we turn around, there's some new lawsuit that gets filed, a speculative lawsuit. You know, they -- they -- they sue my law firm. They file motions for sanctions. And whatever they want to do, I gather -- he wants to do, he just sits with his typewriter and does this.

And it's expensive. It's expensive to continue to keep coming down and having to argue these silly -- these silly lawsuits. And we want to just kind of buy peace and get rid of this. And that's what the $10,000 is for, because he doesn't have any assets.

I -- Again, I can't emphasize enough, the major creditor here is Helvetia. I mean, we're the one --

we're the ones who -- who stand to gain whatever assets there may be in this estate.

I also want to point out one other thing, your Honor. We filed a complaint with the Court to declare the judgments nondischargeable. And --

THE COURT: The judgments that you took against Mr. Kahn?

MR. POWERS: Yes.

THE COURT: Under what provisions of the Bankruptcy Code?

MS. BARKLEY: Your Honor, Section 523(a)(4) and (a)(6).

THE COURT: So, breach of fiduciary duty --

MR. POWERS: Right.

THE COURT: -- or defalcation, and (a)(6), malicious -- willful and malicious injury?

MR. POWERS: Yes.

THE COURT: All right. What's the status of that lawsuit? Do you know, Ms. Barkely?

MS. BARKLEY: We are drafting a summary judgment based on collateral estoppel. And it should be filed very shortly.

MR. POWERS: Hopefully -- Hopefully, today.

THE COURT: So, you -- A complaint was filed. Mr. Kahn answered?

MR. POWERS: Yes.

MS. BARKLEY: Yes, your Honor.

THE COURT: All right. So, a scheduling order has been issued?

MS. BARKLEY: Yes. I believe so, your Honor. I think we have a deadline to amend pleadings within the next few days.

THE COURT: All right. So, this is the only complaint that you filed in the context of this bankruptcy case, is a dischargeability action against him?

MR. POWERS: That is correct.

THE COURT: And the relevance, it's just informational for me, or what?

MR. POWERS: Well, the relevance is that not only are we the -- by far and away the largest creditor, we have nondischargeable indebtedness here. So...

THE COURT: So you assert. I haven't made that determination.

MR. POWERS: So we assert. And we understand you have not made that determination. But we also think that the law in this district is pretty clear on collateral estoppel; that is that, when you have a final adjudication of this type of misconduct,

that it is, as a matter of law, going to be nondischargeable, which should --

THE COURT: So, if I make the determination down the road that it is a nondischargeable debt--and I haven't looked at the complaint or the answer to that; I'm letting the process unfold--what does that do to any of this?

MR. POWERS: Well, in -- in a sense, I don't know that it does all -- Because, either way, we've got over $2 million worth of debt, whether it's dischargeable or nondischargeable, and by far and away the largest creditor of the estate.

THE COURT: Okay.

MR. POWERS: So, that's the -- That's, I guess, the major point there.

A few points about procedural points. The local rules, as your Honor knows, require that there be a witness list and an exhibit list exchanged five days before, and I think it's five business days before a hearing. That did not happen here. There was no witness list, there was no exhibit list.

We did get notice that he served a subpoena on his expert witness. And I think that notice was given to us sometime late Thursday, which is hard -- which I think is -- Let me see. Monday was a -- was a

holiday.

THE COURT: Right.

MR. POWERS: So, I don't think that's five days. And, on top of that, no witness list was ever served. Okay? Just the subpoena. And, of course, no exhibit list was served, though he did attach that appraisal to his objections.

I want to make my objection that he has not complied with the local rules, because he has not.

THE COURT: On the exhibit list and the witness?

MR. POWERS: And the witness list.

THE COURT: All right. That's fine.

MR. POWERS: And I want to preserve that objection, your Honor. I know your Honor will probably want to hear from the expert. And, quite frankly, I don't want to give him another appellate point, you know. But I want to make this objection, nonetheless, because I do want to -- I don't want to give up that issue.

THE COURT: Okay.

MR. POWERS: Again, thank you, your Honor.

THE COURT: All right. Now, Mr. Kahn.

MR. KAHN: Thank you, your Honor.

I would like to start off saying that a lot of

this information that Mr. Powers just said is incorrect. Number one, --

THE COURT: Is it -- Let's -- If I may, sir.

MR. KAHN: And I will go through it in --

THE COURT: Wait. Just wait. No, no. The way this works is, when I ask a question, you stop talking and you answer my question.

MR. KAHN: Sorry, your Honor.

THE COURT: So... And you'll learn this if you go to law school. By the way, I teach at law school, too.

For your information, I want to know, you -- you should -- I hope you noted that I -- I sort of examined Mr. -- the Trustee in this case, Mr. Thomas, about a number of things. Do you disagree or contest anything that he told me?

MR. KAHN: Practically everything, your Honor.

THE COURT: Practically everything. Okay. So, we'll need to deal with that, as well.

So, I just want to get that -- I know you disagree with Mr. Powers. You -- Basically, everything that Mr. Thomas said you disagree with, as well; is that correct?

MR. KAHN: Well, there's a lot of things

that Mr. -- what Mr. Thomas said that I can clarify, --

THE COURT: Okay.

MR. KAHN: -- I would like to clarify.

To start off with, is that the many different companies and -- are not -- there is no more companies. They've all been shut down, so... And there's no assets in any of them, so...

THE COURT: There's nothing to sell?

MR. KAHN: There's nothing there.

THE COURT: All right.

MR. KAHN: Okay. The -- I have a chart which I submitted -- which I submitted to the -- in -- in my pleading.

THE COURT: Okay.

MR. KAHN: And if I may --

THE COURT: Do you all have a copy of this chart?

MR. KAHN: They have a -- They have a copy.

MR. POWERS: Your Honor, no exhibits were exchanged.

THE COURT: Well, this is -- I view this as demonstrative evidence. So, do you have a copy of this chart?

MR. KAHN: In -- In the supplemental --

MS. BARKLEY: No objection, your Honor. Let

me --

THE COURT: Okay. So, we want to make sure -- I appreciate you putting this together. This is a chart of issues as of October 9th, 2014.

Do you have a copy of this, Mr. Thomas?

MR. KAHN: Yes. He -- He --

MR. THOMAS: I got the same email that he --

MR. KAHN: It's in the -- in the -- in the motion, itself.

MR. THOMAS: Supplemental motion.

THE COURT: All right. So, you all have this. So, I'm not treating this as an exhibit. I'm treating this as a demonstrative.

You're going to tell me about the assets in your case?

MR. KAHN: I'm going to tell you about --

THE COURT: Are we picking him up, by the way?

ERO: Yes, sir.

THE COURT: All right. Go ahead, sir.

MR. KAHN: One of the -- They keep on talking about all these different cases, and I'm -- I'm going to -- to go over them slightly, and -- and also on the appeals process. Because, you know, if you recall, your Honor, I also filed an adver- --

there was an adversary proceeding, of which, to start off with this guy here, who -- who only knows -- doesn't know to tell the truth, claimed that I stole over a million dollars out of Helvetia's funds.

THE COURT: Okay.

MR. KAHN: And, to answer that, in the answer of the adversary proceeding, I submitted every check, every -- for every bank account. And they -- So -- And an analysis of it, which I -- I will show -- which I -- which is also there, and it's also -- so that -- to show that this -- this is -- you know, this is being prosecuted.

One of the things that's in their -- in their -- in their motion is they claim I stole $60,000. And one -- This is one section. They have different ones.

THE COURT: Which motion are you referring to, Mr. Kahn?

MR. KAHN: In the adversary -- adversary proceeding.

THE COURT: If I may, the adversary proceeding's not before the Court. What's before the Court is this issue. The issue is whether or not the Trustee can sell these assets. You've objected.

MR. KAHN: Well, I have also -- I have also a -- a hearing for sanctions against him for a million

dollars that's scheduled to be heard Tuesday, sir, on the 29th of this month.

THE COURT: Okay. And I don't think -- Mr. Thomas, is that part of what you're selling?

MR. THOMAS: I don't --

THE COURT: I don't -- I didn't think so.

MR. THOMAS: I don't -- I don't think so, Judge. I was going by the schedules, the schedules that were filed in the case. And I think this sanction came up after it, as part of the adversary.

THE COURT: Is that correct, Mr. Kahn?

MR. KAHN: This -- This -- This came up -- The adversary proceeding --

MR. THOMAS: Right.

MR. KAHN: -- you're involved in. And you've gotten -- You were noticed --

MR. THOMAS: That's postpetition. Those --

MR. KAHN: You were noticed about the adversary proceeding, and you were also noticed -- also noticed --

I'm sorry, your Honor. And I'm also sorry about, sometimes I'm closing my eyes. I -- I've had some surgery. So...

THE COURT: Well, that's all right.

So, but this -- this is -- this is a lawsuit you

filed after you filed bankruptcy; right?

MR. KAHN: No. No, no. No, wait a minute. They filed an adversary proceeding.

THE COURT: "They," who is?

MR. KAHN: Helvetia.

THE COURT: Right. And that's the dischargeablity action against you?

MR. KAHN: Right. Then I came back, in my answer -- in my answer, I answered them. And then I made -- I also filed a motion for sanctions, let 21 days go by so that they could change it, or anything. And I filed a motion for sanctions.

THE COURT: In the adversary proceeding?

MR. KAHN: In the adversary.

THE COURT: Okay.

MR. KAHN: But this is -- this -- this is a giant asset. Because in the adversary, I have, essentially, a thousand pages, over a thousand pages, you know, the checks, you know, the checks of each one of the people that I sent to, you know. So, the complete explanation of all the funds that I've sent, so that I didn't steal any of the money.

The -- The -- With this -- As I was saying in that $60,000 example of one of the -- This is one of the examples. I needed -- I wrote a check out for --

for Mr. Ripley to get their -- their -- their --

THE COURT: Okay. We're not trying the case. You've actually answered my question, which is, this is -- this is a pleading that you filed against Helvetia or Haynes and Boone asking for sanctions of a million dollars.

MR. KAHN: Right.

THE COURT: Mr. Thomas, does the Chapter 7 estate have an interest in that -- in that motion for sanctions?

MR. THOMAS: We do not, Judge, have an interest in the sanction motion filed in the adversary.

THE COURT: So, it's not an asset he's trying to sell, nor he's claimed any interest in. So, it's -- it's not part of the motion today. If -- If you prevail on that, that's -- that's -- whatever accrues as a result of that, that's your money, it's not the estate's money.

MR. KAHN: Okay.

THE COURT: So, we don't need to get into that. I understand you filed the motion, but that's not part of what's before the Court today.

MR. KAHN: Well, one of the things, your Honor, that they -- they mentioned is -- was --

Let's go into the -- the sanction -- the sanction case.

THE COURT: The one that they -- that Haynes -- that Helvetia filed against you; correct, sir?

MR. KAHN: Helvetia filed against me.

THE COURT: Right.

MR. KAHN: I -- I am charged, under -- In Texas Civil -- Civil Remedies, Chapter 10, sanctions cannot be charged against a party who is represented.

I didn't sign that -- that -- that pleading, an -- an attorney signed the pleading. So, that is -- that is just, basically, major in that I -- I am not responsible for it.

Then, this is -- this is almost the same thing with the $60,000 that they played games with. Let me just clarify that, your Honor, because it's -- it's a typical situation that I have been plagued with throughout -- throughout these proceedings, which have gone on for over a year now.

I -- And -- But I hit the -- the button for $20,000 so I could pay -- so I can pay Mr. Ripley, Mr. Ripley's credit card. Okay? But I made a mistake and I -- it didn't come up to twenty, I hit it again and I hit it again. So, I hit three times.

So, I took $60,000 out of Helvetia and put it into -- I believe I put it into Joabert because Joabert is the one who put -- spent the money. I don't know. Then --

THE COURT: But is this part of the lawsuit that's pending in state court?

MR. KAHN: Yes.

THE COURT: Stop. Stop. You're missing the essential point. I'm not going to make a determination on any of that. That's -- Don't -- Don't --

MR. KAHN: Well, I'm not asking you to --

THE COURT: Focus. Focus on what I'm trying to ask you.

So, the merits of those lawsuits will be determined by a state court. Do you disagree -- Listen to my question. Do you disagree that what Mr. Powers said about all of the lawsuits that you filed, that judgment has been entered against you?

MR. KAHN: Judgment has been entered against me, and it is on appeal, your Honor.

THE COURT: All right. So, it's on appeal. But right now, right now, as it stands right now, those -- those lawsuits are worth nothing, because you lost. Would you agree with that?

MR. KAHN: That's correct.

THE COURT: All right. So, your point is what on going through this rendition on the lawsuits? They're on appeal. I understand that. You might get them reversed. But the value of the lawsuits right now is nothing.

MR. KAHN: Well, it's -- Well, that's -- that's because it's in the negative -- negative amount.

Now, one of the things is, what they did on the same -- on the sanction motion hearing, which -- which I was unsuccessful on, the -- But it was -- Number one, it -- it was -- It's got all to do with this man named Daggett (phonetic).

THE COURT: You're arguing the merits again.

MR. KAHN: I -- I -- I -- I know. I'm just trying to --

THE COURT: You're missing the point. You're -- With all due respect to you, you're missing the point. My job, as it stands right now, is the Trustee's filed a motion before this Court, and says, Judge, I need to administer this estate, and here are the assets I need to administer.

He's described -- You've already agreed as to, I have three categories of assets. I have interest in

small businesses. You've conceded that they have no value.

MR. KAHN: Right.

THE COURT: Then I have shares of stock, which we'll come to in a minute, in Helvetia and Joabert or Joabert. And then I've got all these causes of action, which we're talking about right now. You've conceded that you've lost all of these cases. You filed them and you lost. They may or may not --

MR. KAHN: But -- But --

THE COURT: Don't interrupt me.

They may or may not be on appeal. Their value as to -- What you need to understand, their value right now is zero. Despite the fact they're on appeal, they're final determinations. They're not worth anything.

So, what is it that -- What's the value to the estate?

MR. KAHN: The value to the estate is to Joabert, the shares in Joabert, which is worth $3 million.

THE COURT: Well, let's -- let's -- But I'm asking you about the causes of action. So, we've -- You've already said on the record --

MR. KAHN: That's a -- That's a cause of

action ending in 17012.

THE COURT: Okay.

MR. KAHN: And -- And that's where -- That -- That cause of action is -- is pending. And it -- In fact, it -- it is in this court, because the state court sent it over here. So, I don't know if we're going to get that heard in this -- in this court.

THE COURT: And state -- I can tell you this much. State courts don't send me anything. I send stuff to the state court.

So, what -- All we have right now is, we've got a dischargeability action pending against you. In the context of the dischargeability action, you've got a motion for sanctions against the plaintiff. If you prevail --

You need to back away from that. You're a little close.

MR. KAHN: I'm sorry, your Honor.

THE COURT: If you prevail on the motion for sanctions, and you win any monetary relief, that's yours. I've already asked the Trustee. He says, I agree with you, Judge. That's yours.

So, again, we need to focus on what's before the Court. What's before the Court is a motion to sell

nonexempt assets. And, as best I can tell right now, you have no value in these businesses you've listed. And all the causes of action, judgment has been rendered against you, they're final, they have no value, and you've moved to appeal them.

MR. KAHN: Not -- There's no cause of action -- nothing in 1701. The Joabert one has not -- has not been -- has not been adjudicated at all. And that's the -- That's where I might -- where I have the value of -- of at least $3 million, in round numbers.

THE COURT: All right. So, you -- you've sued Joabert, or Joabert sued you?

MR. KAHN: I sued Joabert.

THE COURT: Okay.

MR. KAHN: I sued Joabert, as a minority stockholder.

THE COURT: Go ahead.

MR. KAHN: And -- Based on that I was -- I was taken advantage of, --

THE COURT: Okay.

MR. KAHN: -- as a minority stockholder. And that I had one/third -- There's -- There's three hundred shares; I own a hundred and Mr. Ripley owns two hundred. Now, that is the --

THE COURT: Where is that case pending?

MR. KAHN: It's dead. In other words, it -- it isn't pending at all. I wish -- I -- I'd like it to get pending. And -- And --

THE COURT: What do you mean by "dead," sir?

MR. KAHN: I mean, it's -- it's here. It -- It's been stayed.

THE COURT: Okay. So, you're saying that you filed a cause of action against Joabert in this court?

MR. KAHN: No, not in this court, in the state court.

THE COURT: Okay. And are you the plaintiff or the defendant?

MR. KAHN: The plaintiff.

THE COURT: And what -- When you say "dead," what do you mean by "dead"?

MR. KAHN: It -- It was -- It was put into bankruptcy, and the -- the state court said it's now in -- into the bankruptcy court.

THE COURT: So, that's what the state court said?

MR. KAHN: That's what the state court said.

THE COURT: All right.

MR. KAHN: But they -- they -- If I can get a -- a lift stay and -- and have that heard, because

the -- the assets of the -- of the -- of the -- of the company, my assets, are -- are -- are related to Joabert.

THE COURT: Okay.

MR. KAHN: Now, I -- Also, there's a claim of action against the City of San Antonio that's been also stayed. And that one was something that the City raised the road -- raised their road up, and, because of that, there was some CP- -- some -- some pipes in the ground down below, and they had to be raised up. And because of that -- Of course -- Of course, I don't want to plead the -- the litigation. But that's -- Because -- Because of that, they -- they made a claim against me in -- for three thousand some-odd dollars for -- for the pipes that -- that were underground. And I counter-claimed them for -- for all the fill and all the work that I had to do.

However, on my chart, I've reduced it because it's -- the -- the value -- the value on that lawsuit, one/third goes to me, one -- and two/thirds goes to Joabert. It belongs to Joabert, which would -- Joabert is -- Even though I'm the -- the -- the -- the defendant in that case, and the counter-plaintiff, the -- the actual benefit or cost was -- was Joabert's not Bert Kahn.

THE COURT: Is the Trustee selling this cause of action to Helvetia?

MR. KAHN: Yes.

THE COURT: Which one is that?

MR. KAHN: That -- That is Counter- -- Counter-Claim 389092.

THE COURT: Okay. And you maintain that case is pending in our court, in bankruptcy court?

MR. KAHN: It -- It -- When -- When I filed bankruptcy, at the advice of my son, which was wrong, I shouldn't have done that, but at the -- at the --

THE COURT: You can dismiss your case. Have you thought about that?

MR. KAHN: Pardon?

THE COURT: You can dismiss your case, ask the Court to dismiss your case.

MR. KAHN: I even -- I even said that to -- I sent, even, a memo Mr. Thomas at one point to dismiss this -- dismiss -- to dismiss the -- the -- the case, and he said no.

THE COURT: Okay. Well, I mean, if --

MR. KAHN: I should have just filed it. I -- I might seem to be trying to be an adversary, but I'm not, your Honor.

THE COURT: All right. So, let -- let's --

let me stop you --

MR. KAHN: I'm just defensive.

THE COURT: Let me -- Let me stop you right here. We've checked. There's only -- The only -- The only related lawsuit that's pending in the United States Bankruptcy Court is the dischargeability action. No case has been removed here. So, there aren't any pending cases. If they're in state court, they're in state court, they're not here. So, I can't deal with those. They -- They're pending in another court.

So, back to my point. If they're "dead" right now, and they're not progressing, they have no value.

MR. KAHN: Well, how do I get them out of state court -- out of -- Can I file a motion right now to -- to --

THE COURT: I can't give you legal advice. You filed this case.

MR. KAHN: Well, --

THE COURT: If you think -- If you need to take some remedy, that's something you'll have to decide. Is your son a lawyer?

MR. KAHN: Yes.

THE COURT: Then maybe you can talk to him.

MR. KAHN: But he doesn't know anything

about bankruptcy, except he told me to go to bankruptcy.

THE COURT: Okay.

MR. KAHN: So, --

THE COURT: So, let me help you out. We're -- With all due respect, we're moving on from the causes of action, because I can tell you right now, you -- notwithstanding your dispute as to the value of -- or legitimacy of these causes of action, they have no value right now.

Now, you've subpoenaed a gentleman to be here. Who is this individual you've subpoenaed?

MR. KAHN: The man is a -- an appraiser who has appraised the property.

THE COURT: Which property?

MR. KAHN: The Royal Crest Subdivision.

THE COURT: Okay.

MR. KAHN: And he has -- he's recently appraised it. He has appraised this property previously, for Falcon Bank. That's why I chose him to appraise this property.

THE COURT: And why do I need to hear testimony from this gentleman?

MR. KAHN: Because he said the value of the property is nominally $12 million.

THE COURT: So you say? Or he says?

MR. KAHN: He says.

THE COURT: All right.

MR. KAHN: And, also, in my lawsuit, where I worked out a cost analysis, it also comes out that the value at the -- at the present time is worth $12 million

THE COURT: Okay. And the point of this is what? Let's assume he's correct, just for discussion purposes. Why -- Why is that relevant to today's proceedings?

MR. KAHN: Well, then, that means I have an asset of $3 million. Actually, it's four million, but there's -- there's set-offs. So, let's say I have an asset of $3 million, which I show right here. It'd be three million one hundred and -- you know.

THE COURT: But you realize your ownership interest is contested, as to -- as it relates to that, first of all, and that the value is also contested? You would recognize that?

MR. KAHN: The value is not contested.

THE COURT: It's not?

MR. KAHN: Who contests it?

THE COURT: Well, I mean, we have a -- You say it's part of the lawsuit, and the lawsuit has basically been -- you've lost.

MR. KAHN: The lawsuit hasn't -- hasn't -- hasn't -- The Joabert lawsuit has not -- The Joabert lawsuit has not -- is not doing anything at the present time.

THE COURT: Okay. So, why do I need to hear testimony from this gentleman, who's sat patiently --

MR. KAHN: Well, it'll show that my assets are -- are -- are beyond -- a lot -- a lot more than $10,000.

THE COURT: Okay. So, this -- Does this relate to the lawsuit, sir, or your shares of stock in Joabert?

MR. KAHN: It relates to my shares of stock in Joabert.

THE COURT: Now, how much of a value did you place on the -- the shares of stock in Joabert on your schedules?

MR. KAHN: It's three million -- I have -- In the schedules, I had it a little -- it was a little bit different because I refined it down. It's three million -- Right now, it's $3,103,000.

I adjusted it because Mr. Ripley had taken $160,000 out of -- out of the -- out of the funds, and that would reduce -- reduce his -- his loan, which would -- you know, which -- which would make the

profit of -- of the -- Joabert a little bit more. So, I -- I adjusted that.

THE COURT: All right.

MR. KAHN: So, --

THE COURT: So, I need to hear testimony from this gentleman because he's going to tell me that the value of this development is -- is $12 million, of which your share would be a little over $3 million; is that correct?

MR. KAHN: That's correct.

THE COURT: All right. So -- And how do -- And that relates to your shares of stock, and also maybe the lawsuit that you filed that you lost on; is that correct?

MR. KAHN: No. I didn't lose on it.

THE COURT: You didn't lose?

MR. KAHN: No.

THE COURT: What happened?

MR. KAHN: We lost on -- We -- We lost on -- on -- on Helvetia, or the Key Largo Subdivision, I've lost on. But I didn't -- Royal Crest, I have not lost on it. It has not -- has not been adjudicated.

THE COURT: Okay. So, what is it -- Let's -- Let's get to the essential point. Do you want me to deny the Trustee's motion?

MR. KAHN: Yes, your Honor.

THE COURT: Why?

MR. KAHN: Because I have -- Because the value is a lot -- worth a lot more than -- than $10,000, and the Trustee did not -- one, didn't -- didn't get any -- any other bids. And according -- according to some case law that I -- I found, Merry-Go-Round (phonetic) and Rose versus Logan (phonetic), it's supposed to be that the Trustee, to sell, has to do some due diligence, and to show that -- that there's -- that this is the highest and best price.

I can -- I can grab the -- the words on that, your Honor.

THE COURT: That's fine.

MR. KAHN: But it basically says that in two district court cases, Rose versus Logan and in Merry-Go-Round. So -- And that's in my --

THE COURT: So, who else is going to buy these assets, if not Helvetia? Who's going to buy them?

MR. KAHN: You -- You mean, in -- in Joabert?

THE COURT: All of this stuff. Whether it's the causes of action, the interest in the business, or

the shares of stock, who else is in a position to buy these assets? You raised the question, well, he should have exposed it to a bid. So, my question to you is, who else would buy these assets?

MR. KAHN: Anybody -- Any developer would want to buy the assets to -- for -- for -- for Joabert.

THE COURT: Okay. What's the status of Joabert right now, in terms of development?

MR. KAHN: Pardon?

THE COURT: What's the status of Joabert right now, in terms of development?

MR. KAHN: It's in the -- They were not -- Excuse me. I would -- Let me show you another picture here.

THE COURT: Okay.

MR. KAHN: This is Joabert, your Honor, or the Royal Crest Subdivision.

THE COURT: You can come around, Ms. Barkley, and watch. That's not a problem.

So, this is the development otherwise known as Royal Crest; is that correct?

MR. KAHN: That's correct. And this is the approved master plan that I did, that's getting approved by the city.

THE COURT: Okay. And has it been approved by the city?

MR. KAHN: Yes, it has.

THE COURT: Have there been any lots that have been developed? I mean, have --

MR. KAHN: There -- There are lots of -- The first section has got about $250,000 more work to be done to be complete.

THE COURT: And when you say "complete," what do you mean?

MR. KAHN: That -- That -- To be able to get final inspection and to sell lots.

THE COURT: All right. So, the -- Have all the entitlements been done?

MR. KAHN: What do you mean, "the entitlements"?

THE COURT: Well, the improvements. Do we have sewer lines in, electricity?

MR. KAHN: We have sewer lines, we have electric lines, we have --

THE COURT: Have the roads been paved, curbs put in?

MR. KAHN: The roads have not been. That's the work that has to be done, the final. The road hasn't been paved and -- and the curbs haven't put

on -- been put on.

THE COURT: All right. And who's going to put that money in to have that done?

MR. KAHN: Well, we had that money. We had that money reserved, and that money was put into the registry of the court at one point.

THE COURT: Which court?

MR. KAHN: In the state court.

THE COURT: All right.

MR. KAHN: And then they claimed that that -- that money --

THE COURT: Who's "they"?

MR. KAHN: Helvetia.

THE COURT: Okay.

MR. KAHN: Which I object to Helvetia because it -- Helvetia is the -- the corporation, and it shouldn't even be here, and it shouldn't even be in -- in --

THE COURT: They're a creditor, though. They're a creditor of your case. They have two judgments against you.

MR. KAHN: Well, helvetia has that, but Helvetia doesn't really have standing. And we've -- You even ruled about that, I -- when I complained about, they're a foreign corporation.

THE COURT: Oh, I remember this discussion. So, --

MR. KAHN: But I'm -- I'm not -- I don't want to relit- -- I'm not trying to relitigate anything, your Honor.

THE COURT: Okay.

MR. KAHN: But that -- that -- that issue, that particular issue, is in the Supreme Court right now, in regards to standing, and -- and -- and this whole process.

THE COURT: Okay. Well, let's put that aside.

So, what we have right now is, how many lots are ready to be developed?

MR. KAHN: Forty-seven.

THE COURT: And you've indicated that some entitlement work's been done, you've had --

MR. KAHN: Not -- Most of it. Practically all of it.

THE COURT: Well, you'd recognize you've got to have paved roads. That's kind of a prerequisite to selling lots.

So, have the lots been platted?

MR. KAHN: Oh, yes. They're all platted.

THE COURT: All right. So, the question

then is, you just need the city's final approval before you could sell?

MR. KAHN: And -- And to put the -- I have to put the roads in, and the curbs in, and -- and then a couple of, you know, minor things. I've got to put the road signs in, which we own the road signs. There's just a couple of little things I have to do.

THE COURT: So, but you mentioned there was $250,000 set aside for this. The money is tied up in the registry of the state court; is that correct?

MR. KAHN: It was, but -- but Helvetia took the money.

THE COURT: So, they have the money now. So, there is not money, unless you have it, to do the development; is that correct?

MR. KAHN: If I get it, I can get the money. I can go and borrow the money.

THE COURT: How are you going to borrow money? You're in Chapter 7 bankruptcy right now.

MR. KAHN: I'm going to -- From what -- I'm going to -- going to get out of that.

THE COURT: How are you going to do that?

MR. KAHN: I -- I wish I knew. I'm -- I'm going to file a motion to get out.

THE COURT: Okay. So, we -- Who -- Is

this -- Is this property being actively marketed?  Is there -- I mean, is there a broker selling the lots?

MR. KAHN:  What has happened -- What happened is that, when we were just about a month away, and I'm working on the final grades with the -- with the men in the field, they decided that they didn't want to pay me my -- my share, after working eight years on this thing.  I did everything right.  It's been -- I'm the one getting -- We didn't hire anything.  I did all the engineering work, all -- and all the -- all the "dog" work.  And I never -- I never took any money, because I wanted to just leave any money, and I put -- invested money.  I invested over a hundred thousand dollars I had.  And I didn't -- And I didn't take any money.  And I'm working -- I'm working there at -- at 6:00 o'clock in the morning and -- and --

THE COURT:  So, are you working for Joabert, still?  Are you an employee?

MR. KAHN:  I --

THE COURT:  Are you an employee of Joabert?

MR. KAHN:  Not at the present time, no.  I don't -- I -- I was -- I -- I was a -- Was I an employee?  I never collected any money, so...

THE COURT:  All right.  So, you're not an

employee. Are you an investor in Joabert?

You need to back away from it. You're a little too close. Back away. Thank you.

MR. KAHN: Sorry.

THE COURT: That's all right. Go ahead.

So, you're not an employee of Joabert. Do you have -- Do you have some sort of -- You've got shares in Joabert; is that correct?

MR. KAHN: I -- We had a contract with Mr. Ripley, which is -- Joabert turned into a corporation because we thought that the corporation was the -- was -- the -- the format was --

THE COURT: Are you an officer, or were you an officer of Joabert?

MR. KAHN: Absolutely. I was the vice-president.

THE COURT: Are you still the vice-president?

MR. KAHN: They -- They changed -- They changed it. They -- No.

THE COURT: All right. So, you're not an officer, you're not an employee. You --

MR. KAHN: That's today.

THE COURT: Today. Listen to my -- I understand that.

So, you have shares in Joabert. But as Joabert stands right now, all Joabert -- Joabert has is raw land and partially developed land; is that correct?

MR. KAHN: And an approved plat. We have an approved plat here, for this one, and an approved master plan. And practically all of this, the development has been substan- -- a good part of it is substantially done.

THE COURT: So, your only interest in Joabert, based upon what you've told me, is your hundred shares of stock?

MR. KAHN: Right.

THE COURT: And the only way that you're going to get anything out of that after -- There's debt in the case; correct? I mean, they -- they -- Joabert --

MR. KAHN: Well, debt to -- debt to -- to Ripley and myself, who were the two owners.

THE COURT: All right. So, but there's -- there's debt. Didn't you -- Didn't Joabert borrow money to acquire this land?

MR. KAHN: No.

THE COURT: So, they bought the land outright?

MR. KAHN: Yes.

THE COURT: Not -- Not one bit of debt, at all?

MR. KAHN: Wait a minute. There is one debt, one -- one debt to Mr. Gatsby. If we sell -- When, and only when, we sell these -- some -- a few of those lots, there's -- there's a debt of -- of $250,000.

THE COURT: All right. So, you're representing to the Court that Joabert has no debt. And you have shares -- You have a stock share interest in -- in Joabert; is that correct, sir?

MR. KAHN: That's correct.

THE COURT: All right. Now, you recognize that you're not going to -- Is it -- Or do you agree that you're not going to get paid anything on your shares until these lots are developed? I mean, there's no money to get out of the entity right now because nothing's been built.

MR. KAHN: Well, no. It -- It's -- No. It -- There's electric. There's -- There's --

THE COURT: No, I mean, homes. No homes --

MR. KAHN: There's impact (indiscernible; simultaneous speakers) dollars, your Honor.

THE COURT: There's no homes that have been

built.

MR. KAHN: No homes -- There's -- No, no homes have been built.

THE COURT: Okay.

MR. KAHN: But there's -- there's -- there's the roads. There's -- There's impact fees of -- of at least $2 million that have been paid to the sanitary and water systems. So, the value of this is -- And all these -- all these roads -- all these roads have been carved in and graded -- and substantially graded out. A couple of roads over in here haven't -- The main road coming in is all graded up. It's -- It needs -- What it needs to do is, you know, we need to -- The plan was, is to sell this section, take the money and then -- you know, and --

THE COURT: I understand.

MR. KAHN: -- and -- and forward it.

THE COURT: What's the name of the gentleman that you brought in as the appraiser?

MR. KAHN: Mr. Gary Mowrey.

THE COURT: Mr. Mowrey, could you come to the podium, please.

MR. MOWREY: Yes, sir.

THE COURT: Mr. Mowrey, are you here of your own volition this morning?

MR. MOWREY: I was subpoenaed.

THE COURT: All right. So, you're answering a subpoena.

What's -- What's your relationship -- First of all, give me your background. What kind of appraiser are you, sir?

MR. MOWREY: I'm a commercial real estate appraiser, I've been doing it for 25 years, with Stouffer & Associates.

THE COURT: All right.

MR. MOWREY: I appraise subdivisions, is one of my specialties. I've done it -- hundreds and hundreds of subdivisions.

THE COURT: Thank you. Did you appraise this property?

MR. MOWREY: Yes, I did.

THE COURT: When?

MR. MOWREY: April of this year.

THE COURT: All right. And who did you do the appraisal for?

MR. MOWREY: Mr. Kahn.

THE COURT: All right. So, he -- he engaged you to do an appraisal. And, so, you have -- you have an opinion as to value on this?

MR. MOWREY: Yes, sir.

THE COURT: All right. So, you understand that you're here this morning. You've sat, and I appreciate it, very patiently through these proceedings. And you understand that the reason you've been -- If I let you testify--I haven't decided whether I'm not going to, or I'm going to allow you to do it--you're going to give an opinion as to value of the subdivision.

Now, the one thing I will let you answer right now is, you noticed I've asked Mr. Kahn lots of questions about the status of the development. Is his rendition accurate, that there has been -- that it's been platted, there's been some utilities in, but the roads still need to be constructed, curbs need to be put in? Is that accurate?

MR. MOWREY: I'm not an engineer, but I believe that's accurate.

THE COURT: All right. There -- There are -- Are -- There are not any lots for sale right now; is that correct?

MR. MOWREY: Correct.

THE COURT: All right. Thank you.

Could you step away for a moment, please?

Thank you.

So, do you want to -- Do you want to put -- You

said he's costing you money.  Do you want to put his testimony on?

MR. KAHN:  Yes, your Honor.

THE COURT:  All right.  And he's going to give testimony as to what?

MR. KAHN:  As to the value of -- of -- The as-is -- as-is value of the -- of the -- of the property right now.

THE COURT:  Okay.  And you're -- Let's be clear.  Your interest in -- in the property is derived from your stock -- ownership of shares of stock in Joabert?

MR. KAHN:  That's -- That's correct.

THE COURT:  All right.  Yield the podium. I want to hear from the other parties, please.  If you'll step away.  Take your -- Take your drawings, if you could, please.

All right.  Mr. Powers.

MR. POWERS:  Yes, your Honor.

THE COURT:  So, you've raised the objection that -- that Mr. Kahn is not in compliance with the local rules, that he -- he did not provide you a witness list nor an exhibit list five days in advance, as prescribed under the local rules, as to the gentleman testifying and also his appraisal; is that

correct?

MR. POWERS: That is correct, your Honor. No witness list or exhibit list was exchanged.

THE COURT: All right. So, I'll deal with that in just a minute. So, let's back up.

What is your understanding, I'm asking for your opinion, of Mr. Kahn's interest in Joabert?

MR. POWERS: He claims to have a one/third interest in the equity of Joabert.

THE COURT: Okay.

MR. POWERS: Okay? Not in the land.

THE COURT: I understood that distinction.

MR. POWERS: Okay. And, your Honor, I -- I don't know if he was under oath just now when he was saying about --

THE COURT: I didn't swear him in, I just asked him some questions. You're right.

MR. POWERS: When -- About the property --

MR. KAHN: I tell the truth.

THE COURT: Don't interrupt. You'll get your chance, Mr. Kahn.

Go ahead, Mr. Powers.

MR. POWERS: You asked questions, I think, about the debt on the property.

THE COURT: Right.

MR. POWERS: I have, in my hand, Mr. Kahn's state court action, which has been dormant in state court for some time, against Joabert Development Corporation, because nobody will prosecute it. And --

THE COURT: Is he the plaintiff in that case?

MR. POWERS: He's the plaintiff in that case.

THE COURT: Is there a reason why the case isn't going forward?

MR. POWERS: None that I know of, because it's not stayed by this Court.

THE COURT: Correct.

MR. POWERS: And the Trustee, if he -- if he thought it had value, would have intervened as the plaintiff, and I don't hear him --

THE COURT: Let me -- Maintain your thought. I want to acknowledge on the record that your -- your recitation of the law is correct. The stay does not preclude the Debtor from bringing causes of action against other parties. Further, to the extent that this is a cause of action that belongs to the estate, the Trustee has the right to intervene and take over control of the lawsuit, and he has not done that.

So, please continue.

MR. POWERS: That is correct, your Honor.

And, for the record, that is Cause Number 2013, Prepetition Lawsuit C117012.

But in this pleading filed by Mr. Kahn, he says, the outstanding debt, which is understated, but he admits the outstanding debt, he says, the property is encumbered, total outstanding, $3,377,000.

THE COURT: Is there a lien on the property, to your knowledge?

MR. POWERS: Your Honor, I don't know if there -- if it's actually -- I don't know. I don't know if there's a deed of trust on it. But I know that the debt on the property -- The property had to be acquired, it had to be developed, it had to be --

THE COURT: That's why I ask the question.

MR. POWERS: Yeah. So, that's why that -- that -- So, there's indebtedness, and there's loans on the property. And even the document through which he claims a one/third interest in the equity acknowledges that all debt has to be paid before he gets a dime.

So, that's -- that's point one.

With respect to this opinion, I -- again, I don't understand the relevance of it because, one, it's not an opinion as to the value of his shares, which is the

only thing relevant in this case, and that is, what is the value of a minority interest in an undeveloped real estate project. And that -- And, so, his opinion does not -- does not go to any germane issue here.

Number two is that the property, itself, he doesn't appraise the property as it is, in its current condition, he appraises it as a completed project. Nor does he opine as to how much it would cost to get the project to be completed. And, as he admitted to the Court, he's not an engineer, he doesn't know how much it would cost to get the thing completed.

So, what he has given is a speculative opinion about what the property might be worth, if it were developed, which it is not, and he has no opinion as to the cost of the development.

He also gives no opinion as to the debt that's on the property or the indebtedness that has to be paid with respect to the corporate obligations to repay that debt with respect to the improvements to the property.

So, I -- I -- Also, your Honor, I -- for what it's worth, we do have an offer that was made on the property for -- as- -- as-is, which, for whatever reason, was not done. It was like, I think, four million dollars.

THE COURT: I'm sorry. Say that again?

MR. POWERS: Four million -- Four million dollars as-is.

THE COURT: The statement before, that you said something prior to your statement about the four million dollars.

MR. POWERS: Well, I don't know why it wasn't taken into account, into the opinion but -- of the property -- real estate. But there was an offer for the property, and we have a written offer from --

K.B. Homes, is that who it is?

-- K.B. Homes, which is --

THE COURT: Who has a written offer?

MR. POWERS: We do, for -- for -- Joabert does, for $4.5 million, as-is.

THE COURT: Is -- Is -- Is Joabert your client?

MR. POWERS: Joabert's a client, yes.

THE COURT: Okay. And how -- how do you represent them? How did you come to represent them?

MR. POWERS: I represent the -- John -- John Ripley and Bob Ripley are brothers. Bob Ripley owned the Helvetia project, John Ripley owned the other project.

THE COURT: The Joabert project?

MR. POWERS: The Joabert project.

THE COURT: So, that's how you came to represent both of them?

MR. POWERS: Yeah. Both of them.

THE COURT: Okay. Now I understand.

MR. POWERS: And -- And, so, the point of all this is, your Honor, that you've got all this debt on the property, it's not complete, it's not -- has to be finished out, nobody's offering to finish it out to get it into final form.

He doesn't have rights in the property, to begin with. His claim to stock ownership is -- is nebulous, and in dispute. There's been a lawsuit to try to establish his interest, that's been pending for some time. Nobody -- The estate doesn't have the assets to prosecute that frivolous piece of litigation. Nobody has stepped up to take it. They can't find a lawyer who would do it.

And I guess that's all I have to say about that, your Honor.

THE COURT: All right. What's -- Mr. -- Hang on.

Mr. Thomas, do you have any position on this?

MR. THOMAS: Judge, I wouldn't have anything to add.

THE COURT: What is the total debt in this case; do you all know?

MR. POWERS: Our debt is 2,300,000. And the -- And the rest is, kind of, credit card debt, isn't it?

(Sotto voce exchange.)

MR. THOMAS: Judge, he's -- he's listed 304,000 unsecured debt.

THE COURT: Okay.

MR. THOMAS: He didn't take into account -- And that's where I came up with my percentage. So, he didn't take into account a lot of the corporate debt.

THE COURT: Okay. And what's the amount of the assets in the case?

MR. THOMAS: He's stating the value of the lawsuits and the interest in the corporations at $5,470,729.

THE COURT: All right. Thank you. Thank you.

So, I need to hear -- Go ahead. Did you want to say anything else, Mr. Powers?

MR. POWERS: I just wondered, am I through?

THE COURT: Yes, you're through.

So, Mr. Kahn, you want me to hear from this gentleman. He's going to give an opinion of value?

MR. KAHN: Well, I'd like to get something straight in regards to the -- in regards to the debt --

THE COURT: Okay.

MR. KAHN: -- that I listed and that we had, is Mr. Ripley -- Ripley's -- in -- in the contract that we had that was -- which turned into the -- to the -- basically, a partnership agreement that turned into a stock corporation, was that Mr. Ripley would supply all the money and I would -- I would do all the work, in very simple terms.

Mr. -- Mr. Ripley's put in something like $2 million, over $2 million in properties. And that's what -- That's the money we used to -- that I used to buy all this property up, buy the property and -- and -- and then start to develop it, and pay all the people that were there.

The -- So, this -- this grand -- There was no other -- The only other debt, as I stated, was that, in one section of the -- of the property, it went -- it -- when that sold, there was a debt of the $250,000 to Mr. Harold Gatsby. But, otherwise, the --

There's also a debt owed to me of a hundred -- a hundred thousand dollars, because I put that money in to -- to -- to get this thing started, so... But

there is no -- nobody else.

As far as K.B. Homes, K.B. Homes was trying to buy this property before we even -- even had the -- the master plan. And -- And they -- they had a bid of five -- They were going to pay something like, I think it was five or six million, five million dollars. It was -- It was even more than that. It was -- It was somewhere -- Oh, for a certain section. It was somewhere around $5 million before we did too much -- an awful lot more work.

There's now -- A bid of 4.5 is another one of the baloney that this man is always --

THE COURT: You didn't accept the offer of five to six million dollars, did you?

MR. KAHN: No.

THE COURT: So, it was -- That's all it was, was an offer.

MR. KAHN: Okay. And now he's saying that after -- after we did that, and -- and the impact fees changed from -- from, like, five -- a million dollars to two million dollars, that we're going to take 4.5 million.

THE COURT: All right. So, let's --

MR. KAHN: There -- There is -- 

THE COURT: Let's get to the matter at

hand. I've -- Did you, in advance of the hearing today, one, provide a copy of the appraisal to counsel for Helvetia and the Trustee?

And, two, did you identify -- What's the gentleman's name again? I'm sorry?

MR. KAHN: Mr. Mowrey.

THE COURT: Did you identify Mr. Mowrey as a potential witness for the hearing today?

MR. KAHN: Yes, I did.

THE COURT: When?

MR. KAHN: I -- I sent -- When I -- When I -- When -- When I got the subpoena, and when the subpoena was issued, which was -- I believe it was last -- last Thursday. So, it's six days that -- that -- that he's had it. He doesn't want to -- So, --

THE COURT: Well, let's -- let's look.

We have -- With the Court, we have your supplemental objection. I don't see -- The motion to sell was filed on August 29th, so that's some time ago. Then you filed an objection on September 17th. Then the Court, on September 22nd, set the hearing for today. You moved to continue; I denied that at the hearing. Then you filed a supplemental objection.

Where is your exhibit list or designation of

witnesses, because it's not of record with the Court?

MR. KAHN: I didn't supply one, your Honor.

THE COURT: All right. So, how -- What proof do you have that you -- you sent to opposing counsel and the Trustee a designation of exhibits and witnesses?

MR. KAHN: I -- I sent -- I sent them in the -- In my motion, I attached the exhibits.

THE COURT: Okay. And did that include -- Did that include the appraisal?

MR. KAHN: The appraisal and -- Yes. I -- The appraisal, it included the appraisal, and the chart that I just showed you.

THE COURT: Right. What about designating Mr. Mowrey as a witness?

MR. KAHN: I -- My designation was that -- that, I sent them a copy of the subpoena before -- I sent a -- the copy of the subpoena not on Thursday, on Wednesday, a day before.

THE COURT: Wednesday of when? Last week, sir?

MR. KAHN: Last week. Yes, sir.

THE COURT: Do you have proof of that?

MR. KAHN: I -- I -- I have it in an email.

THE COURT: Okay. Do you all dispute that,

that he, one, attached a copy of the appraisal with his motion; and, two, sent you a copy of the subpoena last Wednesday?

Ms. Barkley?

MS. BARKLEY: Your Honor, we did get a copy of the Stouffer appraisal. But I believe--and I can show you in an email from my secretary--that we got the subpoena on Thursday.

MR. KAHN: Oh, then it got -- There's --

THE COURT: Of last week, Ms. Barkley? Is that correct?

MS. BARKLEY: Yes, your Honor.

MR. KAHN: Oh. Then that's when I got it served. So, it was last Thursday, they got the copy of the subpoena, sir.

THE COURT: Okay. So, what I'll do is, for purposes of the record, I under- -- your objection is noted. I'm going to rule the over objection (sic). I'm going to take testimony from Mr. Mowrey.

Now, let -- let me caution you. If the -- the testimony that you're eliciting is not focused and relevant, I will cut you off. And it'll -- it'll be real short. So, I want you to focus on what it is.

Now, you're going to have to demonstrate to the Court -- Because you have a standing problem in this

case. And -- And the law, frankly, is pretty clear. I had one of my law clerks look because, you know, they -- they're smart. And there's a case on point that talks about as follows: The Chapter 7 debtor is a party in interest and has standing to object to a sale of assets or otherwise participate in litigation surrounding assets of the estate only if there could be a surplus after all creditors' claims are paid.

This is a Second Circuit opinion, In re: 60 East 80th Street Equities, Inc., 218 F.3d. 109, Second Circuit, 2000.

I don't know if there's a case on point in the Fifth Circuit, but you are not the first Chapter 7 pro se debtor I've had where there's been an objection raised to a sale of property.

So, you need to establish that your interest in Joabert exceeds the amount of the claims in this case. And if you can't do that pretty quickly, I'm cutting you off and the hearing will be over.

So, we're going to take a five-minute recess, and then I'm going to hear from your witness.

MR. KAHN: Thank you, your Honor.

THE COURT: All right. Short recess.

COURTROOM DEPUTY: All rise.

(Recess.)

THE COURT: All right, Mr. Kahn. You can call your witness.

MR. KAHN: Mr. Mowrey, please take the -- take the witness --

THE COURT: Mr. Mowrey, will you come forward please and appear in front of Ms. Gutierrez? She's going to administer the oath, sir.

(Witness sworn by the Courtroom Deputy.)

COURTROOM DEPUTY: Would you please state your first and last name, spelling your last?

THE WITNESS: Gary Mowrey, M-O-W-R-E-Y.

THE COURT: M-O-W...

THE WITNESS: ...R-E-Y.

THE COURT: Thank you.

You may proceed, Mr. Kahn.

MR. KAHN: Thank you, your Honor.

<u>DIRECT EXAMINATION</u>

<u>BY MR. KAHN:</u>

Q.   Good morning, Mr. Mowrey.

I had -- Did you make an appraisal of the Royal Crest Subdivision in and around April of this year?

A.   Yes, sir.

Q.   What did you -- What did you consider as, as-is, the -- the value of that property?

MR. POWERS: Objection; no predicate.

THE COURT: Sustained.

You're going to have to develop, sir, how he reached his conclusion as to the value. You simply can't ask him that. You've got to go through and ask Mr. Mowrey how he reached his conclusion on value.

MR. KAHN: Okay.

Q. (By Mr. Kahn) Mr. -- Mr. Mowrey, do you have a standard procedure in your -- when you appraise real estate subdivisions?

A. Yes, sir.

Q. Could you please state what the -- that procedure is?

A. We estimate the current as-is value of the lots, as if they were developed. Then we estimate the absorption period that it would take to sell these lots to builders. We do a discounted cash flow over the estimated absorption period, come up to a net present value after subtracting expenses to develop the property. And the conclusion is prospective value upon completion of construction.

Q. And did --

THE COURT: Is that of all the lots, sir?

THE WITNESS: Yes. That's 444 lots.

THE COURT: Thank you.

Go ahead, sir.

Q.    (By Mr. Kahn)  And did you follow those rules when you made the appraisal of the property?

A.    They're not really rules, but procedures, yes.

Q.    Procedures.  Yes.

And I see in the -- the appraisal that there's the location and similar lots and a -- and a copy of the master plan in it.  Did you -- Did you -- With your calculations, did you arrive at a -- an as-is --

A.    Under prospective value upon completion of construction, of eleven million eight fifty.

MR. POWERS:  Objection, your Honor; nonresponsive.  The question was as-is.

THE COURT:  All right.  Can you -- Can you -- Sustained.

Q.    (By Mr. Kahn)  What is the as-is value of that property?

A.    We didn't do an as-is value of that property.  We did a prospective value upon completion of construction.

Q.    Well, it says here a prospective value of --

THE COURT:  When you say "here," what page are you referring to?

Do you have an objection, sir

MR. POWERS:  I was just -- I was waiting for him to finish his question.

THE COURT: All right.

THE WITNESS: It's on the third page, prospective value, market value opinion, September 1. We did the appraisal as -- in April. We assumed a six month construction period, and a completion date in September to start the construction -- or to finish the construction of Phase One, and each phase would roll after that.

THE COURT: All right. So, Phase One is how many lots, roughly?

THE WITNESS: I don't remember.

THE COURT: All right. That's fine, if you don't.

Q. (By Mr. Kahn) I show you this --

THE COURT: Okay. You can't go to -- Can you put it right there, sir?

MR. KAHN: Yes, sir.

THE COURT: Can you see it from there, Mr. Mowrey?

THE WITNESS: I've got an exhibit of that in my appraisal.

THE COURT: All right. Go ahead, sir.

Q. (By Mr. Kahn) Yeah. The phase one, --

A. Yes.

Q. -- it says how many lots -- Well, does the phase

that -- Pardon me. The phase that we did was not Phase Three. We did Phase Three first.

A. That's 49 lots in Phase Three.

MR. POWERS: Objection; leading.

THE COURT: All right. I'll overrule that. That's fine. Please continue.

Q. (By Mr. Kahn) Now, when you -- I'm -- I'm a little confused on the point of -- If the -- If you sold the property -- If -- If the market value that you -- What is the market value of that property to sell right now?

A. Prospective value upon completion of construction is eleven million eight fifty.

MR. POWERS: Objection; nonresponsive.

THE COURT: Sustained. May -- If I may intervene. Mr. Mowrey, is it accurate to say that you do not have an opinion as to the present value of the property as-is today?

THE WITNESS: The net present value upon completion of construction is what I conclude. I don't have an opinion of the as-is value today.

THE COURT: Right. And the reason that you can't give an opinion as to the as-is value is why?

THE WITNESS: It was beyond the scope of my

appraisal.

THE COURT:  Thank you.

THE WITNESS:  I wasn't -- I wasn't asked to do that.

THE COURT:  All right.  So, you can't ask him -- He -- What -- Let me just intervene.  I've heard probably a couple hundred appraisals since I've been on the Bench.

Which governs -- What set of standards governs, sir, how you may conduct an appraisal?

THE WITNESS:  The Uniform Standards of Professional Practice.

THE COURT:  Right.  And USPAP is, I think, how we refer to it?

THE WITNESS:  USPAP.

THE COURT:  USPAP, as I understand it in listening to many appraisals, will not allow you to testify as to an opinion on which you didn't base your appraisal.  Is that correct?  I stated that wrong.

You can't give an opinion on value if you didn't give an appraisal to that effect?

THE WITNESS:  Correct.

THE COURT:  Is that correct?

THE WITNESS:  That's correct.

THE COURT:  So, you can't ask him about what

the value is today. The only thing that Mr. Mowrey can give an opinion on is what the value is of the property fully developed. Is that correct, sir?

THE WITNESS: Yes, sir.

THE COURT: So, you have -- He's not -- It's not he's not qualified, that he doesn't have the requisite training or skill. But he -- he can't give you an -- He can't give an opinion as to value as to the property as it exists today. He's governed by certain ethical -- I'll use --

May I use the word ethical? Would that be correct, sir?

THE WITNESS: Standards.

THE COURT: Standards. And he can't violate those standards as an appraiser.

MR. KAHN: I -- I wouldn't -- I wouldn't ask him to.

THE COURT: I know you wouldn't. But you -- you understand the point of why I've intervened. You can't -- He can't give an opinion of value as it exists today.

MR. KAHN: Well...

Q. (By Mr. Kahn) Now, you -- you --

MR. KAHN: Well, that's all the questions I have for him, your Honor.

THE COURT: All right. Thank you.

One moment, sir.

Do you have any questions of the Witness?

MR. POWERS: Your Honor, just -- a lawyer always has to ask a few questions, just for appearance

THE COURT: Think about that.

MR. POWERS: Okay.

THE COURT: Think carefully about that. You -- You can ask questions.

MR. POWERS: I have no questions, your Honor.

THE COURT: Mr. Thomas, do you have any questions?

MR. THOMAS: No, Judge.

THE COURT: All right. Then -- With no further questions, then you don't get a chance to Redirect.

May I excuse Mr. Mowrey?

MR. POWERS: Yes, your Honor.

MR. THOMAS: Yes, your Honor.

THE COURT: Mr. Kahn?

MR. KAHN: (Inaudible.)

THE COURT: Mr. Mowrey, I appreciate your patience, and thank you for being here.

THE WITNESS: Thank you.

THE COURT: All right. So, Mr. Mowrey was unable to give an opinion because he wasn't asked to give an opinion of the as-is value of the property. He can only give a prospective opinion.

As a result, Mr. Kahn, you have not established what the value of Joabert is -- or -- or Royal Crest is today. So, you do not have a pecuniary interest in this case. And as a result, you don't have standing to object to the motion to sell.

So, for purposes of the record, I'm going to make the finding that, given that the Debtor has not established that there is a value that exceeds the debts in this case, let alone the debt against Royal Crest property, that he does not have a pecuniary interest in this motion to sell.

So, I'm going to overrule your objection and grant the motion to sell.

MR. KAHN: Your Honor? Your Honor?

THE COURT: We're done. We're done. I gave you your chance. You can't establish --

MR. KAHN: (Indiscernible.)

THE COURT: Don't interrupt me. Do not interrupt me. Let me -- Let me -- Let me help you out and just tell you this.

I have been exceedingly patient this morning.

I've afforded you the opportunity to present your case. Once you were unable to present that there was any value that could be established as to the as-is value of the Royal Crest property today, you don't have standing to object to the motion to sell. So, --

MR. KAHN: Do I -- Do I have an opportunity to take the stand myself?

THE COURT: No. Because you -- you offered expert opinion, and you can't establish the value. I'm not going to let you testify as to what you think the value is because, while a debtor can do that, the reality is, I find that your testimony won't be credible on that point because you have an inflated opinion about what value is that's contradicted by the fact that the appraiser couldn't give any value.

MR. KAHN: Well, in -- in -- in the pleadings, 17012, that the -- it goes -- it is outlined exactly what -- what the -- the cost -- the value is, which was approximately $12 million.

THE COURT: I understand that. And -- And let me -- let me be as precise as I can.

There were three categories of assets the Trustee is seeking to sell this morning: Shares in Helvetia, --

Is it Joabert?

MR. KAHN: Joabert

THE COURT: -- Joabert; causes of action that you have filed as the plaintiff, Mr. Kahn; and then your interest in several business entities.

You acknowledged on the record that, as to business entities, they've either closed, ceased operations or have no value.

MR. KAHN: Right.

THE COURT: As -- As to the causes of action, all those causes of action, you've lost, as the plaintiff, several matters on appeal. There is Fifth Circuit precedent that recites, notwithstanding the pendency of an appeal, a ruling by a trial court is a final judgment. So, I can ascribe a value to those causes of action, and I ascribe a value of zero.

That leaves only the shares of stock in Helvetia and Joabert -- or Joabert. Forgive me. As to Helvetia, accepting as true your listing of value of your share -- a thousand shares of stock of $685,000, you would still have to demonstrate to the Court that your interest in the other entities, the Royal Crest property, when added to that value, exceeds the amount of debts in this case. It doesn't.

So, for purposes of the record, I'm first going

to find that you don't have standing based upon my conclusion about value. And I'm also going to find that your objections are not well taken.

So, Mr. Thomas, the motion is approved.

MR. THOMAS: Thank you, Judge.

THE COURT: All right. We're done.

COURTROOM DEPUTY: Order in the file?

THE COURT: Order -- May I sign the order in the file?

(Sotto voce exchange.)

MR. KAHN: Your Honor, I --

(Sotto voce exchange.)

MR. THOMAS: I'll let them look at it first, your Honor, you know, and then...

THE COURT: All right.

MR. KAHN: I -- I do object, and I will appeal it.

THE COURT: Your appeal -- You may -- You certainly, as a litigant, have the right to appeal. And I've explained my reasoning on the record. You can certainly, if you want, have the District Court consider the Court's ruling. But for purposes of this morning, I've made my decision.

MR. KAHN: Now, whether --

THE COURT: We're -- We're done. When I

make a ruling, we're done, sir. You're excused.

Ma'am?

COURTROOM DEPUTY: (Indiscernible?)

THE COURT: No. He didn't ask for them to be admitted. You may return them to him.

All right. Thank you.

MR. POWERS: Thank you, your Honor.

COURTROOM DEPUTY: All rise.

MR. POWERS: Thank you for your time.

(Recess.)

* * * * * * * * * * * *

I, Court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          1-2-15
Signature of Approved Transcriber          Date


Darla Messina
Typed or Printed Name

# EXHIBIT 5



**Subject:** RE: Burt Kahn Bankruptcy

**From:** bob@rwwattorneys.com (bob@rwwattorneys.com)

**To:** glentrail@yahoo.com;

**Date:** Monday, August 31, 2015 6:06 PM

I had not seen this. Is the Trustee selling your cause of action against Robert on the Southside(?) development ?

Robert W. Wachsmuth

Robert Wachsmuth & Associates

SWBC Tower, Suite 707

9311 San Pedro Ave.

San Antonio, Texas 78216

Telephone: (210) 342-2707

Facsimile: (210) 342-2701

Email: bob@rwwattorneys.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive client-attorney or work product privilege by the transmission of this message.

From: Burt Kahn [mailto:glentrail@yahoo.com]
Sent: Monday, August 31, 2015 3:32 PM
To: bob@rwwattorneys.com
Subject: Burt Kahn Bankruptcy

Dear Bob:

Did you ever get notice of this sale.

Thanks for your prompt response.

Burt

# EXHIBIT 6

**Subject:** RE: case 14-50980 CAG

**From:** Johnny Thomas (1thomas@prodigy.net)

**To:** glentrail@yahoo.com;

**Cc:** peggyjmorris@prodigy.net;

**Date:** Thursday, March 19, 2015 1:54 PM

No money can be distributed until your appeal is finished.

Johnny W. Thomas

Johnny W. Thomas, Law Offices, P.C.
1153 East Commerce
San Antonio, Texas 78205

210/226-5888

210/226-6085 facsimile

THOMAS LAW OFFICE E-MAIL NOTICE - This transmission may be: (1) subject to the Attorney-Client Privilege, (2) an Attorney Work Product, or (3) strictly confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this message in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violation of federal criminal law.
210/226-5888

**From:** Burt Kahn [mailto:glentrail@yahoo.com]
**Sent:** Thursday, March 19, 2015 1:42 PM
**To:** Johnny Thomas
**Subject:** case 14-50980 CAG

Dear Mr. Thomas:

Please send me a copy of the canceled checks you distributed to all my creditors due to the $10,000 sale of all my worldly goods and life.

Thank you

Burton Kahn

# EXHIBIT 7



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 29, 2014.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 7 |
| | § | |
| BURTON M. KAHN | § | Case No. 14-50980-cag |
| | § | |
| Debtor. | § | |

### ORDER DENYING DEBTOR'S MOTION TO DISQUALIFY PUERTO VERDE LTD
### TO MAINTAIN A LAWSUIT IN TEXAS
[relates to Dkt. No. 30]

Came on for hearing on April 24, 2014, the Motion To Disqualify Puerto Verde Ltd. to Maintain a Lawsuit in Texas [Dkt. No. 30] (the "Motion") filed by Burton Kahn ("Debtor"). The Court heard evidence and considered the arguments of counsel for Helvetia, the Chapter 7 trustee, and the Debtor, who appeared _pro se_. The Court finds that good cause exists to deny the Motion; accordingly, it is hereby

ORDERED that the Motion is DENIED.

_###_